# In the United States Court of Federal Claims

No. 06-695 C

(Filed: July 30, 2007)

| | | |
|---|---|---|
| ******************************************* | | |
| **BRICKWOOD CONTRACTORS, INC.,** Plaintiff, | * | Statute of limitations; subject matter jurisdiction vs. failure to state a claim upon which relief can be granted; Tucker Act; Contract Disputes Act; waiver of sovereign immunity; contracting officer's final decision; default termination; date of receipt by the contractor of facsimile; fax confirmation sheet |
| v. | * | |
| **THE UNITED STATES,** Defendant. | * | |
| ******************************************* | | |

*Scott J. Newton*, Stephens, Boatwright, Primeau, Cooper & Coleman, Manassas, VA, for Plaintiff.

*Meredyth D. Cohen*, Trial Attorney, with whom were *Donald E. Kinner*, Assistant Director, *David M. Cohen*, Director, *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

---

**OPINION**

---

**DAMICH**, Chief Judge.

Before the Court in this contract case is the government's motion to dismiss, alleging that the Court lacks jurisdiction over the claim by Brickwood Contractors, Inc. ("Brickwood") because the complaint was filed after the statute of limitations period had expired. The government asserts that the statutory period should run from the date that the final decision of the contracting officer was received by the contractor by facsimile, as confirmed by a fax confirmation sheet, rather than from the date that the final decision was received by certified mail. For the reasons set forth below, Defendant's motion to dismiss is DENIED.[1]

---

[1] The Court notes that Plaintiff filed a motion for hearing on Defendant's motion to dismiss; however, the Court found no need for oral argument. In light of the decision herein,

## I. Background

On or about May 5, 2003, the government issued an Invitation to Bid on a construction project in Loretto, Pennsylvania, known as the FCI Loretto Water Tower Repair. Compl. ¶ 4. The government awarded Contract No. J20802c-011 ("the Contract") to Brickwood for $769,998.00 on July 23, 2003. *Id.* ¶ 6.

On or about June 30, 2005, the government issued a cure notice to Brickwood based on Brickwood's alleged unsatisfactory performance of the Contract. *Id.* ¶ 9. On or about July 28, 2005, the government issued a show cause notice. *Id.* ¶ 11. Thereafter, the government issued a notice of termination for default, which the government indicated to be a final decision. *Id.* ¶ 12. Brickwood received the termination notice via certified mail on October 8, 2005. *Id.*

Brickwood filed suit in this Court on October 10, 2006.[2] Brickwood alleges that it was not in default of the Contract and that the government's termination for default was not substantially justified. *Id.* ¶¶ 13-14. Therefore, Brickwood asks the Court to convert the default termination to a termination for convenience and to award attorney's fees, costs and expenses pursuant to the Equal Access to Justice Act. *Id.* ¶¶ 15, 17.

On January 25, 2007, Defendant filed, in lieu of an answer, the instant motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC").

## II. Standard of Review

Subject matter jurisdiction is a threshold matter which may be challenged at any time by the parties, the Court *sua sponte*, or on appeal. *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998); *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 382 (1884)). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the plaintiff's well-pleaded facts alleged in the complaint, and draw all reasonable inferences in the plaintiff's

---

Plaintiff's motion for hearing is denied as moot.

[2] The Court notes that an earlier cause of action was filed by Brickwood on March 2, 2005. That claim, however, alleged breach of contract in violation of the Payments Clause and asked the Court to award progress payments to Brickwood. On December 20, 2005, that case was dismissed without prejudice, after Brickwood repeatedly failed to retain counsel.

favor. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). The plaintiff, however, bears the ultimate burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." *Fed. Nat'l Mortgage Ass'n v. United States*, 379 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *United States v. King*, 395 U.S. 1, 4 (1969)). Moreover, waivers of sovereign immunity are to be strictly construed. *Sherwood*, 312 U.S. at 590.

The Tucker Act, 28 U.S.C. § 1491 (2000), constitutes a waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). However, "[t]he Tucker Act . . . is only a jurisdictional statute; it does not itself create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Plaintiff, therefore, must identify another source of law that creates a substantive right and demonstrate that the source of law mandates compensation by the federal government. *Mitchell*, 463 U.S. at 216-17.

The Tucker Act provides:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2000).[3] Hence, the Tucker Act grants this Court jurisdiction over claims against the United States arising under the Contract Disputes Act ("CDA").

Under the CDA, a contractor must first submit a claim against the government relating to a contract to the contracting officer for a final decision. 41 U.S.C. § 605(a) (2002). A final decision by the contracting officer, or the failure of the contracting officer to render a decision within the specified time period, serves as the basis for appeal to this court. 41 U.S.C. § 609(a)

[3] Section 10(a)(1) of the Contract Disputes Act ("CDA") is codified at 41 U.S.C. § 609(a)(1), and section 6 is codified at 41 U.S.C. § 605.

(2002); 41 U.S.C. § 605(c)(5) (2000). The CDA provides that an action "shall be filed within twelve months from the date of receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3) (2002). The CDA further provides that "[t]he contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 605(a) (2000). Pursuant to the implementing regulations, "[t]he contracting officer shall furnish a copy of the decision to the contractor by certified mail, return receipt requested, or by any other method that provides evidence of receipt." 48 C.F.R. 33.211 (2005).

## III. Analysis

In its motion to dismiss, Defendant argues that Plaintiff has failed to meet the statute of limitations requirement set forth in the CDA and, therefore, the Court lacks jurisdiction over Plaintiff's claim. Defendant acknowledges that if Plaintiff did in fact first receive the contracting officer's notice of termination for default on October 8, 2005, via certified mail, then the filing of the complaint on October 10, 2006, was "within twelve months from the date of receipt" and, therefore, timely.[4] However, Defendant contends that there is ample evidence to show that the default termination notice was received by Plaintiff on September 15, 2005, via fascimile. Consequently, Defendant asserts that Plaintiff did not timely file its complaint in this Court. Because the lawsuit was not filed within twelve months from the date of receipt of the default termination, Defendant avers that this Court lacks subject matter jurisdiction over the claim and the claim should be dismissed pursuant to RCFC 12(b)(1).

As evidence that the default termination notice was received on September 15, 2005, Defendant provides a copy of the fax transmittal confirmation sheet, as well as a declaration by the contracting officer, Mr. Robert J. Kruskie, stating that the fax was successfully transmitted on that date. Defendant contends that Plaintiff's evasive behavior after September 15, 2005, serves as additional evidence that Plaintiff did in fact receive the default termination notice. For example, Mr. Kruskie states in his declaration that he attempted to telephone Brickwood to confirm receipt of the fax, but his phone call was not answered. Further, Mr. Kruskie states that he made numerous attempts to deliver the default termination notice to Plaintiff via Federal Express[5] but that, in each case, the mailings were returned undelivered. According to Defendant, similar evasive conduct by Plaintiff was observed when Defendant attempted to deliver its cure

---

[4] October 10, 2006, would be timely because October 8, 2006 was a Sunday and October 9, 2006, was Columbus Day, a legal holiday. Sundays and legal holidays are not included in the computation of the deadline for filing the complaint. RCFC 6(a).

[5] These attempts were made on September 15, 2005; September 19, 2005; September 20, 2005; and September 21, 2005.

notice.[6] By clearly avoiding confirmation of receipt of the September 15, 2005, fax, Defendant contends that Plaintiff demonstrated that it did in fact receive the fax. This circumstantial evidence, according to Defendant, provides enough additional evidence to establish receipt by Plaintiff on September 15, 2005.

### A. Form of the Motion

As a preliminary matter, Plaintiff attacks the form of Defendant's motion. Plaintiff contends that Defendant has improperly filed a motion to dismiss, whereas Defendant should instead have filed a motion for summary judgment. Plaintiff asserts that in order for the Court to even consider the issue of whether the statute of limitations has expired, the Court necessarily must have subject matter jurisdiction over the claim. Therefore, Plaintiff contends that the Court should apply the summary judgment standard and consider the facts in the light most favorable to Plaintiff.

Defendant argues that the statute of limitations set forth in the CDA is a jurisdictional prerequisite to the exercise of authority by the Court of Federal Claims. According to Defendant, the statute of limitations in the CDA is an express limitation on the Tucker Act's waiver of sovereign immunity and, therefore, the United States has not waived its sovereign immunity for claims by contractors filed more than twelve months after receipt of the contracting officer's final decision. Hence, Defendant contends that its motion is properly styled as a motion to dismiss.

To determine whether the statute of limitations is a jurisdictional prerequisite to filing suit in the Court of Federal Claims, the Court must first look to the statutes themselves. The Tucker Act provides that "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1498(a)(2) (2000). Section 10(a)(1) allows "a contractor [to] bring an action directly on [a] claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary." 41 U.S.C. § 609(a)(1) (2002).[7] Section 10(a)(3) requires that "[a]ny action under paragraph (1) . . . shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." 41 U.S.C. § 609(a)(3) (2002). Basic principles of statutory construction would lead one to conclude that the Tucker Act grants the Court of Federal Claims jurisdiction over all claims under Section 10(a)(1) of the CDA, but that Section 10(a)(3)

---

[6] Defendant contends that the cure notice was issued on June 30, 2005, yet Defendant was unable to confirm receipt of the cure notice after approximately six fax transmissions, six phone calls, and four Federal Express mailings. It was not until Defendant went to the project site on July 6, 2005, that Defendant was finally able to verify delivery of the cure notice. That option was, however, unavailable to Defendant in confirming receipt of the instant notice of termination for default since Plaintiff had not been on the job site since mid-August 2005.

[7] Section 10(a)(1) of the CDA is codified at 41 U.S.C. § 609(a)(1).

of the CDA restricts the filing of such claims after a prescribed time period has elapsed. Such an interpretation would, therefore, suggest that the statute of limitations set forth in Section 10(a)(3) does not act as a jurisdictional prerequisite, but rather as a limit on a contractor's ability to file a claim over which the Court of Federal Claims already has subject matter jurisdiction.

The statute of limitations set forth in the CDA is a specific statute of limitations, which trumps the general statute of limitations for claims filed in the Court of Federal Claims. The statute of limitations set forth in 28 U.S.C. 2501 is the general statute of limitations which is applicable to all cases filed in the Court of Federal Claims in the absence of a specific statutory provision, such as that found in the CDA. *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 (Fed. Cir. 1994). A similar argument regarding statutory construction can be made in interpreting the general statute of limitations, which provides: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000). This statute likewise suggests that the statute of limitations acts as a restriction on the filing of claims over which the Court of Federal Claims has subject matter jurisdiction.

The Court of Appeals for the Federal Circuit ("Federal Circuit") has not clearly resolved the question of whether or not a statute of limitations restricts the government's waiver of sovereign immunity. Panel decisions have been divided on whether a claim that is time-barred by a statute of limitations is properly challenged by a motion to dismiss for lack of jurisdiction or a motion to dismiss for failure to state a claim upon which relief can be granted. *See Chaney v. United States*, 75 Fed. Cl. 206, 210-212 (2007) (review of Federal Circuit precedent). The Supreme Court has recently granted a petition for writ of certiorari to decide "[w]hether the Tucker Act's statute of limitations constitutes a clear Congressional statement of a limit on the subject matter jurisdiction of the Court of Federal Claims." Brief for the Petitioner at *10, *John R. Sand & Gravel Co. v. United States*, No. 06-1164, 2007 WL 578742 (Feb. 26, 2007), *cert. granted* 127 S. Ct. 2877 (May 29, 2007). In *John R.*, the plaintiff filed suit for a taking of physical property. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1349 (Fed. Cir. 2006). The Court of Federal Claims has jurisdiction over takings claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000); however, a taking claim must be filed within six years under the court's general statute of limitations. 28 U.S.C. § 2501 (2000). The Federal Circuit held that the six-year statute of limitations is a jurisdictional condition precedent for suit in the Court of Federal Claims, which cannot be waived by the parties. *John R.*, 457 F.3d at 1355.

Recently, the Federal Circuit sitting en banc held that "[i]t is well established that statutes of limitations for causes of action against the United States, being conditions of waiver of sovereign immunity, are jurisdictional in nature." *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc). The panel in *John R.* cited *Martinez* in deciding that the six-year statute of limitations in 28 U.S.C. 2501 is a jurisdictional prerequisite for a suit filed in the Court of Federal Claims. *John R.*, 457 F.3d at 1354. Similarly, the Federal Circuit has found that the statute of limitations prescribed in the CDA limits the government's waiver of sovereign immunity under the Tucker Act and acts as a jurisdictional prerequisite to suit in the Court of

Federal Claims. *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002); *Bath Iron Works*, 20 F.3d at 1572.

This Court feels bound by the recent Federal Circuit panel decisions and by the en banc decision in *Martinez* to conclude that a defect in meeting the statute of limitations should be raised by a challenge to the court's jurisdiction. A challenge to the Court's jurisdiction is properly raised by a Rule 12(b)(1) motion. *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see* RCFC 12(b)(1). The Court may consider evidence outside the pleadings to determine whether it has subject matter jurisdiction. *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). If the Court determines that it lacks jurisdiction of the subject matter, the Court shall dismiss the action. RCFC 12(h)(3). Therefore, the Court finds that Defendant's motion to dismiss is proper.[8]

**B. Receipt by the Contractor**

Plaintiff next argues that the evidence submitted by Defendant is inadequate to show receipt by Plaintiff of the contracting officer's final decision prior to October 8, 2005. Plaintiff contends that the declaration of Mr. Kruskie merely proves that the notice of default termination was transmitted via fax on September 15, 2005, and that Mr. Kruskie was unable to confirm receipt of the notice by Plaintiff until October 8, 2005. Based on the holding in *Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1372-73 (Fed. Cir. 2005), Plaintiff contends that evidence of transmission of a fax is insufficient evidence of actual receipt of the fax. To further support its position, Plaintiff provides the affidavit of Peter Kaos, the President of Brickwood. In the affidavit, Mr. Kaos affirmatively states that he never received a fax copy of the default termination notice and that no agents or employees of Brickwood ever received a fax copy of the notice.[9]

---

[8] The Court notes, however, that its ultimate decision on the motion is not dependent on whether the Court regards the motion as a motion challenging jurisdiction or as a motion for failure to state a claim. Defendant has timely filed its motion raising the issue of whether Plaintiff's claim is time-barred by the statute of limitations and thus there would be no issue of waiver for the Court to consider were it to regard the motion as one for failure to state a claim. Moreover, for the reasons outlined below, the Court finds that Plaintiff has met its burden of showing that the statute of limitations was satisfied and, hence, of establishing jurisdiction. Were the Court to regard the motion as one to dismiss for failure to state a claim, the burden would be on Defendant to prove that Plaintiff had not met the requirements of the statute of limitations, a burden which Defendant necessarily has not met. Therefore, the ruling by the Court would be the same.

[9] Mr. Kaos also states that receipt of the notice of default termination sent by certified mail was delayed because it was incorrectly addressed (wrong postal code). According to Mr. Kaos, Brickwood's correct zip code is 20109, whereas the notice of default termination, and the envelope containing the same, bore the zip code 20139.

Defendant counters that the instant facts are distinguishable from the facts in *Riley*. According to Defendant, in *Riley*, the only evidence to suggest that the fax was received by the contractor was the fax cover sheet, a phone record indicating a 2.6 minute call to the contractor's law firm, and a statement by the contracting officer that the fax machine indicated a successful transmission. Defendant concedes that the court in *Riley* concluded that it could not rely only on the statement by the contracting officer that the transmission was successful and the court stated that it "need not address whether a confirmation sheet is 'evidence of receipt' under the CDA because the government cannot produce a fax confirmation sheet." *Riley*, 408 F.3d at 1372. However, Defendant argues that here there *is* a fax confirmation sheet showing that the transmission was successful. That, according to Defendant, is better evidence than the evidence of receipt available in *Riley*.[10] In addition, Defendant contends that, here, proof of actual receipt of the fax is further buttressed by the evidence that Plaintiff purposely avoided Defendant in order to prevent Defendant from confirming receipt of the fax. Specifically, Defendant provides evidence that it made four attempts to deliver the contracting officer's final decision via Federal Express, but that each of the mailings was returned undelivered.[11] This evidence shows, according to Defendant, that Plaintiff had in fact received the September 15, 2005, fax, knew that Defendant needed to confirm receipt, and was intentionally avoiding any opportunity for Defendant to do so.

The Federal Circuit has held that the burden is on Defendant to prove an earlier date of receipt of a contracting officer's final decision. *Id*. Receipt by the contractor means "actual physical receipt of that decision by the contractor." *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed. Cir. 1991) (quoting *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1577 (Fed. Cir. 1987). "'[O]bjective indicia of receipt by the contractor' must be shown to establish the date of proper delivery of the decision by the contracting officer." *Riley*, 408 F.3d at 1372 (quoting *Borough of Alpine*, 923 F.2d at 172).

*Riley* is the principal case by the Federal Circuit interpreting "receipt by the contractor" in the context of a facsimile transmission. In *Riley*, after the contractor submitted its request for an equitable adjustment to the contracting officer, the contractor closed its corporate offices (although maintaining a P.O. box) and ran its business from home. *Id*. at 1371. When the contracting officer issued his final decision, he mailed the decision to the P.O. box via certified mail and faxed a copy to the contractor's fax number of record. *Id*. The contractor denied that it ever received the fax, claiming that the fax number was changed when the firm relocated. *Id*. at 1372. To attempt to prove that the contractor did in fact receive the fax, the government produced a fax cover sheet, phone records showing a call to the firm fax number of record, and a

---

[10] Defendant acknowledges that the court in *Riley* suggested that receipt of the fax could be confirmed by phoning the recipient. Defendant contends that it did in fact attempt to phone Plaintiff, but Plaintiff did not answer.

[11] Defendant points out that the Federal Express receipts show that the Federal Express mailings, unlike the certified mail, were addressed with the correct postal code.

statement by the contracting officer that the fax machine indicated a successful transmittal. *Id*. With regard to the evidence of fax transmission, the court held:

> [W]e cannot infer receipt from evidence of transmission. Proof of message exit from a transmitting machine cannot serve as a proxy for proof of actual receipt of the sent message by a remote receiving terminal. Simply put, the evidence offered by the government is not the type of "objective indicia of receipt" that the CDA requires to begin the limitations period. The fax cover sheet is only evidence that the fax was prepared. The phone records and contracting officer's statement indicate a fax was transmitted but do not evidence receipt of the fax by the contractor's attorney. The Boards of Contract Appeal have similarly found that a fax transmission sheet is insufficient to show receipt by the contractor stating "[w]e have held that a 'successful' transmission report for a fax transmission was not reliable evidence of receipt of the final decision where the Government did not otherwise confirm receipt." Fax receipt was usually confirmed in these cases by calling the intended recipient of the decision. The Boards of Contract Appeal have also been reluctant to "make the quantum leap and infer from the Government's transmission report's statement 'Transmission OK' that the final decision was received by [the contractor]." We correspondingly find that receipt by the contractor cannot be inferred from the contracting officer's statement that the machine indicated a successful transmission. In essence, the government has not offered any evidence that the fax was actually received by the contractor's attorney. Therefore the Court of Federal Claims erroneously measured the statute of limitations from the date of the fax transmission.

*Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1372-73 (Fed. Cir. 2005) (citations omitted). The court stopped short of deciding whether or not a fax confirmation sheet would suffice as evidence of receipt since the government could not produce a fax confirmation sheet. *Id*. at 1372. The court acknowledged that the Court of Appeals for the Fifth Circuit ("Fifth Circuit") has held that a fax confirmation sheet creates a rebuttable presumption that the fax was received, s*ee Stevens Shipping & Terminal Co. v. MV Japan Rainbow II*, 334 F.3d 439, 444 (5th Cir. 2003), yet the court looked to the Armed Services Board of Contract Appeals for guidance and cited several Board decisions with approval. *Id*. at 1372-73.

There seems to be a split between how district courts have regarded fax confirmation sheets in proving receipt of documents and how the Armed Services Board of Contract Appeals has regarded fax confirmation sheets in proving receipt of the contracting officer's final decision. Like the Fifth Circuit, district courts have consistently regarded fax confirmation sheets as

adequate proof of receipt of the fax. *See Frazier v. Ind. Dep't of Labor*, No. IP01-0198-C-T/G, 2003 WL 21649931, at *3 (S.D. Ind. June 4, 2003); *Equitec-Cole Roesler LLC v. McClanahan*, 251 F. Supp. 2d 1347, 1350 (S.D. Tex. 2003); *see also United States v. Smith*, No. 05-41, 2007 WL 1242859, at *3 (D. Minn. April 27, 2007); *Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389, 392 (D.D.C. 2007); *Hammer v. First Unum Life Ins. Co.*, No. 01 Civ. 9307 (RCC), 2004 WL 1900334, at *2 n.2 (S.D.N.Y. Aug. 25, 2004). This Court finds the Fifth Circuit's position that a fax confirmation sheet creates a rebuttable presumption that the fax was received to be a reasonable rule, particularly in situations as here, where it is nearly impossible for the party transmitting the fax to establish contact with the receiving party to confirm receipt.[12] Assuming that the rebuttable presumption could only be overcome by something more than an affidavit denying receipt, then such a rule could avoid the unfortunate situations, and added taxpayer expense, in which the contracting officer is forced to track down the contractor to confirm receipt.

The Armed Services Board of Contract Appeals has not found evidence of successful transmission to be adequate proof of receipt by the contractor of the contracting officer's final decision. *Appeal of Public Serv. Cellular, Inc.*, ASBCA No. 52489, 00-1 BCA ¶ 30832, 2000 WL 268605 (2000) (fax transmission report indicating "Transmission OK" insufficient to establish receipt); *Appeal of David Grimaldi Co.*, ASBCA NO. 49795, 97-2 BCA ¶ 29201, 1997 WL 542876 (1997) (failure to establish receipt by "circled x" at the bottom of each page of the fax with no evidence of fax number where transmitted). The Board has considered a fax confirmation sheet to be sufficient evidence of receipt only when there is additional corroborating evidence of receipt. *See Appeal of Leixab, S.A.*, ASBCA No. 51581, 98-2 BCA ¶ 29962, 1998 WL 545347 (1998) (government has established receipt when contractor requested that final decision be sent by fax, there is persuasive evidence of successful transmission to contractor's fax number, receipt was confirmed by telephone, and a signed copy was faxed back to government); *Appeal of Mid-Eastern Indus., Inc.*, ASBCA No. 51287, 98-2 BCA ¶ 29907, 1998 WL 414689 (1998) (sufficient evidence of receipt when contractor specifically requested that final decision be sent by fax, there was evidence of successful fax transmission, and contractor did not provide affidavit denying receipt); *Appeals of Tyger Constr. Co.*, ASBCA No. 36100, 88-3 BCA ¶ 21149, 1988 WL 97165 (1988) (adequate evidence of receipt when communication center maintained records of fax transmission and confirmed receipt by telephone, and contractor did not deny receipt). Moreover, in situations where multiple copies of the final decision were forwarded to the contractor and the contracting officer did not inform the contractor which copy of the decision was legally effective, the Board has held that the latter date of receipt is controlling for computation of the statutory period. *Appeal of AST Anlagen-und Sanierungstechnik GmbH*, ASBCA No. 51854, 04-2 BCA ¶ 32712, 2004 WL 1799019 (2004);

[12] The Court is not entirely unsympathetic to Defendant's frustrations in communicating with Plaintiff. The Court itself experienced a great deal of difficulty in communicating with Plaintiff when Plaintiff was under order to obtain counsel. As a consequence, the Court was forced to resort to multiple avenues of communication, including regular mail, certified mail, Federal Express, fax, and e-mail. *See* Court Order of November 21, 2006.

*Appeal of Eastern Computers, Inc.*, ASBCA No. 49185, 96-2 BCA ¶ 28343, 1996 WL 274398 (1996); *Appeal of Kime Plus, Inc.*, ASBCA No. 46580, 94-3 BCA ¶ 27128, 1994 WL 475832 (1994).

The court in *Riley* looked favorably on the decisions by the Board:

> We note the sound judgment reflected in the decisions of the Boards of Contract Appeal that have recognized the ease and simplicity with which the government can gain confidence that a fax transmission has been actually received by the contractor. All the government has to do is make a simple telephone call to the contractor or its authorized representative to affirm actual receipt of the fax. This simple step would give the government assurance of actual receipt that the regulation requires it to have. Indeed, the regulation's preferred method of transmission by certified mail return receipt has the built-in confirmation of receipt that a simple telephone call after a fax transmission would supply.

*Riley*, 408 F.3d at 1373. The court appeared to be looking for something more than the fax confirmation sheet to evidence receipt by the contractor.

This Court finds that Defendant has failed to offer sufficient objective indicia showing that Plaintiff actually received the fax on September 15, 2005. Defendant relies principally on the fax confirmation sheet. In light of the Federal Circuit's decision in *Riley*, the Court is unable to conclude that a fax confirmation sheet is adequate evidence of receipt by the contractor of the final decision of a contracting officer. Although Defendant points to its numerous attempts to contact Plaintiff to confirm receipt of the fax and argues that such serve as further evidence of receipt, the Court is unable to make such an inference, particularly in view of Plaintiff's sworn affidavit stating that a fax was not received. The Court could go so far as to require Plaintiff to provide its fax records for September 15, 2005, to substantiate its claim that no fax was received, but the Court declines to do so because there is no indication in *Riley* that the Federal Circuit intended to adopt the Fifth Circuit's rebuttable presumption rule which would shift the burden of proof of receipt to Plaintiff. Furthermore, there is no evidence that Defendant communicated to Plaintiff which receipt date was to start the clock for the statutory period, nor is there evidence that the certified copy of the final decision referenced the earlier faxed copy, causing understandable confusion on the part of the contractor. According to the holdings of the Armed Services Board of Contract Appeals, the contractor is entitled to compute the statutory period from the latter date of receipt of the final decision, in this case, the date that the final decision was received via certified mail. The Court finds that adoption of the Board's rule is appropriate under the circumstances. Accordingly, the Court holds that the 12-month statutory period began to run on October 8, 2005, and thus Plaintiff's filing of its complaint was timely. The Court does not lack jurisdiction over Plaintiff's claims.

## IV. Conclusion

Defendant's motion to dismiss is DENIED. Plaintiff's motion for hearing is denied as moot.

The Court ORDERS Defendant to file its Answer on or before **August 13, 2007**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge