IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRICKWOOD CONTRACTORS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant. | Case No.: 1:06-cv-695-EJD |

**APPENDIX TO JOINT PRELIMINARY STATUS REPORT**

U.S. Department of Justice

Federal Bureau of Prisons

*Field Acquisition Office - B&F Section*

United States Penitentiary Allenwood
P. O. Box 3500
White Deer, PA 17887

June 30, 2005

Brickwood Contractors, Inc.
Attn: Peter Kalos, President
11304 Industrial Road
Manassas, VA 20139-3910
(703) 392-0228
FAX: (703) 392-0229

Re: Contract Number J20802c-011, Water Tank Renovation
FCI Loretto - Cure Notice

Dear Mr. Kalos:

Pursuant to the Federal Acquisition Regulation (FAR) Subpart 49.607(a), this letter is hereby issued as your official Cure Notice.

You are notified that the Government considers your failure to proceed a condition that is endangering performance of the contract.

1. The lead containment submittals received by the Government as of the date of this cure notice do not fully comply with the contract requirements. Specification 1.05 (B) Criteria for Containment Systems states, "The Contractor shall retain a P.E. (Professional Engineer) to thoroughly examine the structure to be prepared to verify its ability to support a containment system including the wind loads that can be imparted by such a system. The Contractor shall also obtain approval from a C.I.H. as to the adequacy of the proposed structure and ventilation, to prevent fugitive emissions. Containment drawings shall be submitted to the Contracting Officer for review and subsequent approval prior to erection of the containment system". This has not occurred. The plan submitted in 2003 was a general lead abatement plan, not one specific to this project.

2. BCI's method of installing the interior access ladders and offset platforms does not comply with contract requirements. Drawing AR-2, Note 4 requires the contractor to remove and dispose of existing access ladder system complete with

offset platforms, and provide new AWWA and OSHA approved ladder with standoffs every 10 feet on centers, and ladder safety climbing device.

3. BCI has not provided the Government with the telemetering system that controls the two well pumps to maintain satisfactory water reserves in the temporary water tank in accordance with the terms of this contract. Drawing SD-2, Note 5 clearly states these requirements. Also, a submittal has not been sent to the Government. BCI must provide a submittal outlining their method of interfacing the existing system into the temporary system.

4. The contract requires the fill material for the temporary tank to be certified and that the fill material meets or exceeds compaction standards as set forth by the contract specifications. Drawing SD-2, Note 3b explains the material and site preparation. Evidence of this certification must be submitted to the Government.

5. The contract requires the contractor to provide a temporary holding tank pursuant to the specifications and drawings, including Drawing SD-2, Note 3a. It has been documented that there are numerous holes in the liner supplied by BCI. You were previously notified of this defect. BCI must replace the liner with one that meets the certification required for this project.

6. Submittals for the booster pumps and generator, which are for use with the temporary water storage tank system, have not been received by the Government as of the date of this cure notice. BCI must provide these submittals.

7. BCI must provide evidence that BCI has paid all subcontractors in full for completed and accepted work.

8. BCI submitted a schedule on June 27, 2005. This schedule is unacceptable to the Government because it is not in accordance with FAR 52.236-15 and section 01300, part 1.5 of the specifications. Your latest schedule does not include the remaining activities on the project. Also, because BCI was directed to continue performance as stated in the specifications and drawings, that work must appear on the schedule. The schedule did not include the date the containment plan certified by a CIH will be received by the FBOP and the start and completion date for the compaction test. BCI must submit an acceptable schedule.

9. Before setting up the temporary tank, specification section 02300-5, 3.5A states, "fill must be placed in horizontal lifts not to exceed 6" in loose depth" and "compact each lift as specified before placing the next lift." Your failure to do this is jeopardizing the contract.

10. BCI has not submitted documentary evidence to demonstrate the chain of custody of the liner to be used on the project.

Therefore, unless these conditions are cured within 10 days of receipt of this notice, the Government may terminate for default under the terms and conditions of the Default clause of this contract.

If you have any questions or concerns, please contact me.

Sincerely

Robert J. Kruskie

Robert J. Kruskie
Contracting Officer
Field Acquisition Office

cc: J. Wessner, COTR
Contract file
Greenwich Insurance Company

BCI
**Brickwood Contractors, Inc.** *phone (703) 392-0228*
11304 Industrial Road, Manassas, Virginia 20109-3910 *fax (703) 392-0229*

July 13, 2005

Mr. Robert J. Kruskie via FedEx 8504 8455 8878
Contracting Officer
United States Department of Justice
Field Acquisition Office
Federal Bureau of Prisons
Route 15 - Two Miles North of Allenwood
Allenwood, Pennsylvania 17810

Dear Mr. Kruskie:

SUBJECT: Contract No. J20802c-011, Water Tank Renovation, FCI Loretto

**RE: Cure Notice**

I received your Cure Notice. I provide the following answers to your incorrect allegation that Brickwood has failed to perform required contract work.

1. The Lead Containment submittal was approved by the Government over 20 months ago. You are requiring Brickwood to submit additional signed CIH documentation, within fifteen days prior to beginning this segment of work. Brickwood agreed to provide the CIH document, and added the activity to the Schedule. See Item 8 below. Brickwood has fully complied with this requirement.

2. The design for removal of ladders and platforms is a defective design, and will result in structural damage to the Government's tank. You claim Brickwood's method of installing the new interior access ladder does not comply with contract requirements. To reduce stress on the load-bearing platforms before they are removed, Brickwood requires the tank to be drained. The weight of the water currently being supported by the platforms is 4 million pounds. We have a letter from the company that designed and erected the tank under Hydrostorage, Inc. Contract No. 55552, confirming the problem with the load. The tank manufacturer confirms the information we received from the State of Pennsylvania, that the design for this work is defective and cannot be permitted at all.

   Design is beyond the scope of Brickwood's contract. Brickwood's method of performing this work is in full compliance with the requirements of the contract. Additional details are provided at Enclosure No. 1.

3. The method specified for level control on this contract is a defective design. A letter confirming this from the level control equipment manufacturer is enclosed. You are asking Brickwood to provide the Government with a new design to interface the existing telemetering system into the temporary system. Brickwood does not have the in-house resources to design, and you directed Brickwood to stop the work of the outside electrical engineer hired to design the system. Designing a method for level control is beyond the scope of Brickwood's contract. See the additional details and the letter from the manufacturer at Enclosure No. 2.

4. You are requesting evidence of material testing for compaction of the PADOT 2A crushed stone installed on top of the paved parking lot. In compliance with your request, the engineer's test results were submitted to the COTR on-site, as directed by you. All results confirm compaction is above a proctor of 90 percent, and within 90 percent of ASTM D 1557. See Enclosure No. 3. Brickwood has fully complied with your request.

5. You require a temporary holding tank pursuant to Drawing SD-2, Note 3a, and a tank liner that meets the certification required for this project.

   In compliance with Note 3a, Brickwood supplied the contract specified "Econ-O-Tank" manufactured by Mod-U-Tank of Long Island, New York.

   The liner certification was submitted on December 6, 2004, May 4, 2005, May 31, 2005, and June 17, 2005. We also brought Cooley, the liner manufacturer, to the job site to confirm approval and certification of the liner. On May 4, 2005 we also submitted certification from the manufacturer to the fabricator, and on June 16, 2005 the Government examined the original shipping receipt from the fabricator to the job site.

   The Government's specification is based on the Cooley product, and the Government has shown it is familiar with the NSF certified material manufactured by Cooley. We also informed the Government Certification of a drinking water material, can be independently verified on the NSF International web site at www.nsf.org, or by calling 1-800-NSF-MARK.

   The specified design for a Tarp Cover on the Econ-O-Tank is a defective design, because the Econ-O-Tank cannot support the Tarp Cover. A letter from the manufacturer was submitted to the Government. The Government has not designed a new specification to correct the error.

Brickwood is prevented from upgrading to a better tank, because the Government's specification only allows an alternate tank that is of "equal or lesser cost," and there is none.

This contract requires the Government to process submittals in 14 days. The Government took 135 days to process the December 6, 2004 Submittal No. 49. After 44 days, the Government has failed to process the May 31, 2005 Submittal No. 49-B. After 28 days, the Government has failed to act on the shipping receipt examined on June 16, 2005, and the Government has failed to act on the written confirmation from the liner manufacturer. Instead of meeting its contract obligation to process the Submittal, the Government is adding a new request for a Chain of Custody, see Item No. 10 below.

All work remaining on this contract requires use of the liner and the Government's failure to approve the liner is a deliberate act to delay progress.

The liner is NSF certified for drinking water and meets all the criteria of the American Water Works Association (AWWA). Brickwood has fully complied with the requirement to supply the Econ-O-Tank and certified liner, and both the Econ-O-Tank and certified liner have been on site for over one year.

6. The existing specification for a 160,000 gallon pump discharge connected to the Prison's fire hydrant line with a saddle, is a defective design because it does not provide the required safe water supply, does not meet the required fire code, and cannot be connected with a saddle. You are requesting a new submittal for the water pump and standby generator. The Government needs to supply Brickwood with details of the new design made by the Engineer, changing the pump specification and connection to supply the Prison's fire code required 310,000 gallons. Please be thorough in providing all necessary fire flow information.

   The COTR raised this concern last year, and Brickwood has been requesting this information in writing for over six months. This information is needed both to properly size the water pump, and correct the defective design connecting to the existing hydrant line.

   Brickwood is prevented from providing the submittals, until the Government supplies Brickwood with the needed information.

7. All work performed by Brickwood was approved on-site daily as work progressed, in accordance with the specifications. Brickwood disagrees with the Government's claim to have reinspected work six months after it was complete, and after Brickwood closed down and left the site for winter.

The design for the Disinfection Plant is a defective design. After the facility was tested by the manufacturer and the Prison operators were trained, the Government found they need to change the entire Disinfection Plant. The specified system is a defective design because it is not compatible with existing conditions, and does not include equipment needed to receive permission from the State to operate the Plant.

All work performed by Brickwood was completed in full compliance with the contract, and all work passed inspection in process, on a daily basis.

The Government's actions warrant litigation on behalf of Brickwood and its subcontractors.

8. The current Schedule Update meets the requirements of the contract and the Federal Acquisition Regulations. Percent Complete and Percent Cumulative have been included in the Update, see Enclosure No. 4.

   You claim we do not show the resubmitted Containment Plan on the schedule update. Brickwood does show the activity titled "Resubmit Containment Plan." As directed by you, this activity is shown within fifteen days prior to beginning this segment of work.

   You claim we do not show the compaction testing of June 27, 2005. Brickwood does show this activity. It is part of "Add Recompact & Materials Testing To Mods. 4 & 7," and is shown on the Schedule Update. A highlighted copy of the June 27, 2005 Update is enclosed. See Enclosure 5.

   The schedule includes all remaining activities. There is currently no work for us to perform on-site. The current Government delays are shown on the Schedule Update. All work is delayed by the Government and the duration of the delay is unknown to Brickwood. If you provide dates and duration for Government activities, we can add this information to the schedule.

   Brickwood has an approved Schedule for this project, and Brickwood has also submitted an acceptable Schedule Update in full compliance with the requirements of our contract.

9. All PADOT 2A crushed stone was installed on top of an above-ground, paved parking lot, and was compacted in 6" layers. In addition, as required by you, we hired the Engineering firm who designed and worked on the original construction of the existing Water Tank, to perform testing of compaction. This was done on June 27, 2005, and compaction is verified as above 90 percent of ASTM D1557, as you required. As directed by you, the test results were given to the COTR on-site. A copy is also enclosed, See Enclosure No. 3.

10. You are requesting a Chain of Custody for the tank liner fabric. A Chain of Custody is not specified for purchase of the liner. The liner was purchased over one year ago without a Chain of Custody. Most construction materials are not purchased with a Chain of Custody. Previously you requested a Title for the liner, and we explained that this fabric is not Titled, like an automobile.

    As also stated in Item 5 above, we submitted certification four times, we also brought the liner manufacturer to the job site to confirm approval and certification, we also submitted certification from the manufacturer to the fabricator, and we also provide the original shipping receipt for your examination at the meeting last month.

    The Government has failed to meet its contract obligation to process and approve the liner submittal.

    Brickwood has fully complied with and exceeded the certification requirement of the contract.

Last year, the Government added crushed stone, and after the work was completed and the project was halted, the Government issued another Request for Proposal to add geotextile cushioning over the crushed stone. This year, the Government added recompacting of the crushed stone after the winter freeze, then added materials testing for compaction. Still, the Government's design for correcting the differing site condition is a defective design, and the site fails to provide the required safe water supply for the Prison. This failure has been verified with the State of Pennsylvania, to which the Government must comply for its Public Drinking Water System. This failure has also been verified in writing to the Government by Mod-U-Tank, the specified temporary tank manufacturer. The existing tank cannot be drained until the design is corrected, and all remaining work on this contract requires draining the tank.

As shown on our Schedule, there are six design requirements delaying this project:

1. Correcting the Unsafe Water Supply Design
2. Correcting the Pump Design to Meet the 310,000 Gallon Fire Code Requirement
3. Correcting the Design for Adequate Level Control
4. Correcting the Design for a Connection to the Hydrant Line
5. Performing State and AWWA Required Engineering for Tank Repair
6. Designing Changes to Correct Errors Preventing Operation of the Disinfection Plant

Brickwood has verified the design requirements with the State of Pennsylvania, and additional detailed information has been sent to the Government for each item of defective design that is delaying this project. Brickwood was informed by the State of Pennsylvania that only the Government's Design Engineer, Mr. Eugene John Peters, P.E., who has the Professional Liability for this project, can design work on this project.

Design is well beyond the scope of Brickwood's contract, and even if Brickwood hires outside engineers, their designs cannot be used on this project.

Because of the Government's design delays, this work is unlikely to be completed again this year. This is Brickwood's third year on-site. In addition, the Government has been delayed because a well pump is out of service for repair, and a roof repair project is in progress using open flame materials. The dangerous roof work has put a stress on the fire protection requirements for the Prison, that further prevented the Government from risking the use of a temporary water source this year.

If the Government needs to extend the contract completion, to provide additional time to correct the multiple defective designs, and provide a design that will allow work to progress, Brickwood will agree to extend the completion date <u>at no additional cost to the Government</u>.

Brickwood has worked with numerous Government agencies, and has never failed to complete any project, over the course of 23 years in business. Brickwood has performed all requirements of this project in full compliance with the contract.

Brickwood has met and exceeded all performance requirements of the Government's contract.

Sincerely,

Peter Kalos
President

Enclosures:

Enclosures:

1. Details of Methods to Install New Access Ladder, and Letter from Tank Erector
2. Level Control Information and Letter from Equipment Manufacturer
3. Results of Compaction Testing from L. Robert Kimball & Associates Architects and Engineers
4. Schedule Update
5. June 27, 2005 Schedule Update, Highlighted

ATTACHMENT 1

**ATTACHMENT 1**

Contract No. J20802c-011, Water Tank Renovation, FCI Loretto July 13, 2005
**Cure Notice, Item No. 2 - New Access Ladder**

---

The Government is claiming Brickwood's method of installing the new access ladder does not comply with contract requirements. The statement does not provide Brickwood with enough information, to know what specifically does not comply. Brickwood can only fully answer the allegation by reviewing the methods for the repair item.

The existing ladder has standoffs that are 1'- 0½" long, See the drawing for construction of the existing tank, Hydrostorage, Inc. Drawing E5AB at Attachment-A. Specifications require removal of ladders and platforms, so a new straight ladder can be installed.

The new straight ladder will be installed with the same 1'- 0½" standoff from the tank wall, to line-up with the entrance to the existing Drywell walkway. See Hydrostorage Drawing E6 at Enclosure No. B. No changes are being made to the existing walkway. Standoffs will be installed every 10 feet on center as specified.

As specified, the new American Water Works Association (AWWA) and OSHA-approved ladder will include a Ladder Safety Device, to meet OSHA requirements for a water tank ladder without platforms. See OSHA 1910.27(d)(5), Attachment-C.

The Government's Design Engineer with the professional liability for this project is Mr. Eugene John Peters, P.E., of Peters Design Group, Inc. Mr. Peters certified the Government's design, as meeting the requirements for Steel Tanks listed in the Pennsylvania Public Water Supply Manual, See Attachment-D. It does not.

The Pennsylvania Public Water Supply Manual requires conformance with the AWWA Standards for Welded Steel Tanks for Water Storage, or an alternate design approved by the State. As per my previous correspondence, Brickwood confirmed with the State the existing Construction Permit does not allow removal or alteration of the stiffener-plate platforms. The Government did not receive approval from the State for an alternate design to do this work.

Final construction drawings for the existing tank show the platforms are part of the stiffener rings. These are <u>required</u> load bearing structures under the AWWA design standard. See Sections 3.5.2. and 4.12 of the AWWA Standard, at Attachment-E. Also see the original specification for construction of the existing tank stiffeners, at Attachment-F.

The required AWWA calculations were used to design the existing tank. The Drawings from the original tank construction, which Brickwood received from the Prison, show Nine (9) Intermediate Ring Girders, each with a #3-6 Stiffener. The platform is part of the #3-6 Stiffener. Attached is a letter from the company that designed and erected the tank under Hydrostorage, Inc.

**ATTACHMENT 1**

Contract No. 55552, confirming the platforms cannot be removed. The tank erector confirms the information Brickwood received from the State of Pennsylvania, that the design for this work is defective and cannot be permitted at all. See Attachment-G.

The enclosed fax dated August 20, 2004, which Mr. Kruskie sent Brickwood on April 19, 2005, is from Mr. Bob Nitch of Peters Design Group to the COTR. Mr. Nitch says in his fax "we should look to see the alignment a straight ladder would take." Mr. Nitch says a structural engineer said cutting the stiffeners "should" not be a problem. However, no certification is provided by the Design Engineer or any other engineer. See Attachment-H.

Mr. Nitch is referring to a change, to cut holes in the platforms and patch unused holes, instead of removing the platforms as specified. This change was not made, and would require the same design engineering.

Proceeding with the specified design to remove platforms, may violate State regulations that could void the Prison's permit to operate. See Attachment-I.

Because Brickwood has been directed by the Government to proceed with removal of the platforms without hiring an engineer to perform required calculations, Brickwood's method of installing the new straight ladder, requires draining the tank to remove 4 million pounds of water being supported by the platforms. This will reduce the load on the platforms before they are removed.

Brickwood's method of performing this work is in full compliance with the requirements of the contract.

Attachments:

A. Hydrostorage, Inc., Drawing E5AB, Ladder Erection
B. Hydrostorage, Inc., Drawing E6 Drywell Walkway
C. OSHA 1910.27(b)(5)
D. PA Public Water Supply Permit Application, Module 1, Page 1-3, Item D.1., and
   PA Public Water Supply Manual, Page II-8, Paragraph 1.3.3. Steel Tanks
E. AWWA Standard for Welded Steel Tanks for Water Storage
   Section 3.5.2, General Design, Shell Girder, Intermediate Stiffeners, and Compression Rings; and,
   Section 4.12, Sizing and Design of Elevated Tanks, Pedestal Supports
F. Original Specification for Tank Construction, Showing Stiffeners are Load Bearing
G. Fax from CBI Constructors, Inc. (formerly Pitt-DesMoines, Inc. [PDM], formerly Hydrostorage, Inc.),
   and Hydrostorage, Inc. Construction Drawings Dated October 11, 1985, Stiffener #3-6
H. Fax Dated August 20, 2004 from Mr. Bob Nitch
I. State Regulation 25 Pennsylvania Code Chapter 109

# ATTACHMENT A


TOP STIFF HANDRAIL
TYPICAL HANDRAIL
(EXCEPT FOR TOP STIFFENER)
SECTION A-A
SECTION B-B
SECTION C-C
(SEE SECT. A-A FOR WELDING)
HYDROSTORAGE

# ATTACHMENT B



# ATTACHMENT C




FIGURE D-9.—Cages—Special applications.

(2) *Landing platforms.* When ladders are used to ascend to heights exceeding 20 feet (except on chimneys), landing platforms shall be provided for each 30 feet of height or fraction thereof, except that, where no cage, well, or ladder safety device is provided, landing platforms shall be provided for each 20 feet of height or fraction thereof. Each ladder section shall be offset from adjacent sections. Where installation conditions (even for a short, unbroken length) require that adjacent sections be offset, landing platforms shall be provided at each offset.

(i) Where a man has to step a distance greater than 12 inches from the centerline of the rung of a ladder to the nearest edge of structure or equipment, a landing platform shall be provided. The minimum step-across distance shall be 2½ inches.

(ii) All landing platforms shall be equipped with standard railings and toeboards, so arranged as to give safe access to the ladder. Platforms shall be not less than 24 inches in width and 30 inches in length.

(iii) One rung of any section of ladder shall be located at the level of the landing laterally served by the ladder. Where access to the landing is through the ladder, the same rung spacing as used on the ladder shall be used from the landing platform to the first rung below the landing.

(3) *Ladder extensions.* The side rails of through or side-step ladder extensions shall extend 3½ feet above parapets and landings. For through ladder extensions, the rungs shall be omitted from the extension and shall have not less than 18 nor more than 24 inches clearance between rails. For side-step or offset fixed ladder sections, at landings, the side rails and rungs shall be carried to the next regular rung beyond or above the 3½ feet minimum (fig. D-10).




FIGURE D-10.—Offset Fixed Ladder Sections

(4) *Grab bars.* Grab bars shall be spaced by a continuation of the rung spacing when they are located in the horizontal position. Vertical grab bars shall have the same spacing as the ladder side rails. Grab-bar diameters shall be the equivalent of the round-rung diameters.

(5) *Ladder safety devices.* Ladder safety devices may be used on tower, water tank, and chimney ladders over 20 feet in unbroken length in lieu of cage protection. No landing platform is required in these cases. All ladder safety devices such as those that incorporate lifebelts, friction brakes, and sliding

CONSTRUCTION PERMIT APPLICATION
CERTIFICATION PAGE

3800-PM-WSM0002 Rev. 9/99

**SECTION C. CERTIFICATION AND SIGNATURES**

I hereby certify that the completeness report and all plans, modules, and documents designated therein are attached to this application, and made a part hereof.

John Wessner
Signature of Responsible Official

Name of Responsible Official John Wessner

Title of Responsible Official General Foreman

Date of Application 2/28/02

Address FCI Loretto
772 St Joseph St
Loretto PA 15940

RECEIVED
MAR - 4 2002
WATER SUPPLY MANAGEMENT
SOUTH... REGIONAL OFFICE

**AFFIDAVIT**

Commonwealth of Pennsylvania/State of Pennsylvania (Circle one) County of Cambria.

I, John Wessner, being duly sworn, according to law, depose and say that I (am the applicant) (am an officer or official of the applicant) (have the authority to make this application) and that the plans, reports and documents submitted as part of the application are true and correct to the best of my knowledge and belief.

Sworn and Subscribed to before me this 28th Day of February, 2002.

John Wessner
Signature of Responsible Official

Lynne Fenchak
Notary Public

Notarial Seal
Lynne Fenchak, Notary Public
Loretto Boro, Cambria County
My Commission Expires April 8, 2002
Member, Pennsylvania Association of Notaries
Notary Seal

Name of Design Engineer Eugene J. Peters, PE/PLS

Name of Firm Peters Design Group Inc.

Address 301 North Main Avenue
Scranton, PA 18504

Telephone Number (570) 346-8446

Signature of Design Engineer

2-21-02
Date

COMMONWEALTH OF PENNSYLVANIA
REGISTERED PROFESSIONAL
EUGENE JOHN PETERS
ENGINEER

Design Engineer's Seal

3800-FM-WSM0254 Rev. 2/97

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
BUREAU OF WATER SUPPLY MANAGEMENT

Date Prepared 02-21-02

Date Revised

# PUBLIC WATER SUPPLY
# MODULE 1 - COMPLETENESS REPORT

For Department Use Only

RECEIVED
MAR - 4 2002
WATER SUPPLY MANAGEMENT
SOUTHWEST REGIONAL OFFICE

**C. SPECIFICATIONS**

1. Are complete detailed specifications supplied for the proposed project?

2. Do the specifications include a program for keeping existing water works facilities in operation to provide a safe, potable water supply at all times? ☒ Yes ☐ No ☐ N/A

**D. CODES**

1. Will the proposed facilities meet the relevant requirements of good practices codes as listed in the Pennsylvania Public Water Supply Manual? ☒ Yes ☐ No

**E. BEGINNING OPERATION**

1. Will the Department of Environmental Protection be notified by the applicant or his representative before water supplies or additions/major alterations to existing supplies are placed in operation? ☒ Yes ☐ No

**F LABORATORY ANALYSES**

1. Will all future operational bacteriological and chemical laboratory analyses be in accordance with the latest edition of the "Standard Methods for the Examination of Water and Wastewater"? ☒ Yes ☐ No

**G. OTHER STATE APPROVALS**

1. Has application been made:

   a. To the department for allocation of water or for change of natural stream conditions? ☐ Yes ☐ No ☒ N/A

   b. To the Public Utility Commission for a certificate of public convenience? ☐ Yes ☐ No ☒ N/A

   c. To the department for a NPDES permit? ☐ Yes ☐ No ☒ N/A

**H. SEAL AND SIGNATURE OF PROFESSIONAL ENGINEER**

1. Signature of Professional Engineer [signature]

2. Professional Engineer Registration Seal

COMMONWEALTH OF PENNSYLVANIA
REGISTERED
PROFESSIONAL
RUSSELL JOHN PETERS
ENGINEER

1.2.1 Pilot Plant Studies

Pilot plant studies which are to be conducted to determine the adequacy of new treatment technologies or the suitability of an unconventional treatment scheme must be discussed with the regional water supply engineer prior to initiating the tests. Readers should refer to DEP's guidance on pilot plant filtration studies for filtration of surface sources. In addition, the following procedures shall be followed:

a. A report outlining the purpose of the pilot study, the units to be tested, and the monitoring procedures to be followed must be submitted to DEP for approval prior to conducting the study. This report must include information on the water quality parameters of concern, seasonal water quality fluctuations, flow rates, chemicals to be used or other information relevant to the specific proposal;

b. The operation, testing and evaluation shall be conducted under the control of an engineer registered to practice in the Commonwealth and experienced in the design and operation of drinking water treatment system;

c. A record of all operating problems and the procedures used to correct them shall be maintained and submitted to DEP with the final report summarizing the performance of the system.

**1.3 Conformance to Codes**

All installations and operations shall meet or exceed the relevant requirements of the recognized national, state, local or trade good practices codes, whichever has jurisdiction.

1.3.1 Electric Power

All electrical equipment and work shall conform to the relevant requirements of the National Fire Protection Association and to the pertinent state and/or local codes.

1.3.2 Air or Gas

When air or gas is used under pressure, equipment connected therewith shall conform to the current requirements for unfired pressure containers of the American Society of Mechanical Engineers and to other related provisions of that society's code.

1.3.3 Steel Tanks

Applicable facilities shall conform to the current requirements of American Water Works Association's (AWWA) Standard for Welded Steel Tanks for Water Storage.

1.3.4 Chemicals

Where chemicals are used, facilities for the safe storage and handling of chemicals should be provided in accordance with Manual M3, "Safety Practice for Water Utilities", of the American Water Works Association (see Chapter 5).

1.3.5 Disinfection

Facilities for conveying, treating or storing water which is not subsequently treated shall be disinfected in accordance with the latest edition of AWWA's Standards for Disinfecting Water Mains and Disinfection of Water Storage Facilities.