**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BRICKWOOD CONTRACTORS, INC.,<br>Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: 1:06-cv-695-MMS |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA,<br>Defendant. | ) | |

**PLAINTIFF BRICKWOOD CONTRACTORS INC.'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) OF THE RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS**

Pursuant to Rule 60(b) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff, Brickwood Contractors Inc. ("Brickwood"), hereby moves the Court for relief from its April 3, 2008, Order of Dismissal and, for the reasons set forth in the accompanying Brief in support of this Motion, respectfully requests the Court to reinstate the case in order for this Court to adjudicate Plaintiff's claims on their merits.

Date: April 29, 2008

s/ Douglas J. Behr
Douglas J. Behr
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
*behr@khlaw.com*

ATTORNEY FOR PLAINTIFF,
BRICKWOOD CONTRACTORS, INC.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BRICKWOOD CONTRACTORS, INC.,<br>Plaintiff, | ) ) ) ) | |
| v. | ) | Case No.: 1:06-cv-695-MMS |
| UNITED STATES OF AMERICA,<br>Defendant. | ) ) ) ) | |

**PLAINTIFF BRICKWOOD CONTRACTORS INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) OF THE RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS**

Date: April 29, 2008

Douglas J. Behr
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
Email: *behr@khlaw.com*

ATTORNEY FOR PLAINTIFF,
BRICKWOD CONTRACTORS, INC.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

QUESTION PRESENTED ........ 1

STATEMENT OF THE CASE ........ 1

APPLICABLE LAW ........ 7

ARGUMENT ........ 9

I. Brickwood Contractors, Inc. has a Meritorious Claim. ........ 9

II. Granting the Requested Relief Will Not Prejudice the Government. ........ 10

III. The Order of Dismissal was not Caused by Brickwood Contractors, Inc.'s own Culpable Conduct. ........ 12

IV. The Balance of Equities Favors Relief Under Rule 60(b). ........ 16

CONCLUSION ........ 18

APPENDIX

Declaration of Veron Kalos ........ Exhibit 1

Letter from Scott J. Newton to Peter Kalos of February 11, 2008 ........ Exhibit 1-A

Letter from Scott J. Newton to Veron Kalos of January 16, 2008 ........ Exhibit 1-B

Letters from Peter Kalos to Scott J. Newton of January 25, 2008 ........ Exhibit 1-C

Letters from Peter Kalos to Scott J. Newton of January 28, 2008 ........ Exhibit 1-D

Letters from Peter Kalos to Scott J. Newton of January 31, 2008 ........ Exhibit 1-E

Letter from Veron Kalos to Scott J. Newton of January 30, 2008 ........ Exhibit 1-F

Letter from Veron Kalos to Scott J. Newton of February 5, 2008 ........ Exhibit 1-G

Letter from Peter Kalos to Scott J. Newton of February 20, 2008 ........ Exhibit 1-H

Letter from Scott J. Newton to Sean M. Dunn of February 5, 2008 ........ Exhibit 1-I

Subpoena to David Necker, Surety Consultants, of February 7, 2008 ........ Exhibit 1-J

Letter from Scott Newton to David Necker of February 11, 2008 ........ Exhibit 1-K

Email from Veron Kalos to Anthony W. McLaughlin of February 22, 2008 ........ Exhibit 1-L

Exhibit M. Email exchange between Veron Kalos and Anthony W. McLaughlin from February 22, 2008 – March 19, 2008 ........ Exhibit 1-M

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Advance America Services, Inc. v. United States*,
33 Fed.Cl. 524 (1995) .......... 8
*Blois v. Friday*,
612 F.2d 938 (5th Cir. 1980) .......... 16
*Curtis v. Untied States*,
61 Fed.Cl. 511 (2004) .......... 8, 9, 10, 16
*Information Systems and Networks Corp. v. United States*,
994 F.2d 792 (Fed Cir. 1993) .......... 8, 12, 13
*Jackson v. The Washington Monthly Co.*,
569 F.2d 119 (D.C. Cir. 1977) .......... 16
*Orient Overseas Container Line (UK) Ltd. v. United States*,
52 Fed.Cl. 805 (2002) .......... 8, 9, 11, 12, 13
*Pioneer Investment Services Co. v. Brunswick Associates Ltd.*
507 U.S. 380 (1993) .......... 12, 13
*Spann v. Commissioners of the District of Columbia*,
443 F.2d 715 (D.C.Cir. 1970) .......... 16
*Stelco Holding Co. v. United States*,
44 Fed.Cl. 703 (1999) .......... 8, 9, 10, 11, 12, 13, 16
*Tozer v. Charles A. Krause Milling Co.*,
189 F.2d 242 (3rd Cir. 1951) .......... 8, 12

**Rules**

Bankruptcy Rule 9006(b)(1) .......... 13
Federal Acquisition Regulation Section 52.249-10 .......... 10
Fed. R. App. Pro. 3 .......... 12
Fed. R. App. Pro. 4(a)(1)(B) .......... 12
Fed. R. Civ. Pro. 60(b) .......... 8
RCFC 12(b) .......... 10
RCFC 58.1 .......... 12
RCFC 60(b) .......... 1, 7, 8, 10, 13, 16
RCFC 60(b)(1) .......... 8, 12, 13

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure*, § 2857 (2d ed. 1995) .......... 9, 16

## QUESTION PRESENTED

When a case is dismissed by this Court for failure to respond to an Order to Show Cause why the case should not be dismissed, should the Court reinstate the case pursuant to RCFC Rule 60(b) when: (1) the Plaintiff has presented a meritorious claim; (2) granting the requested relief will in no way prejudice the Defendant; (3) the order of dismissal was not caused by the culpable conduct of the Plaintiff; and (4) the balance of equities favors reinstatement of the case for adjudication on the merits?

## STATEMENT OF THE CASE

Brickwood is a small company, which among other things, performs underwater steel repair and coatings and specializes in the repair of corroded steel. Declaration of Veron Kalos ("Kalos Declaration") ¶¶ 3 and 4, attached hereto as Exhibit ("Ex.") 1. Peter and Veron Kalos are the owners of Brickwood and its only full-time employees. *Id.* ¶¶ 1 and 2. Brickwood is considered a small woman-owned business for federal government purposes and the contract at issue in this litigation was a small business set-aside contract. *Id.* ¶ 3. At the time this litigation was filed, Brickwood was located at 11304 Industrial Road, Manassas, Virginia. In December 2006, it moved to its current location at 11306 Industrial Road, Manassas, Virginia. *Id.* ¶ 5. Following this move, Industrial Road was renumbered; the street number 11304 no longer exists. *Id.*

On October 10, 2006, Brickwood filed a Complaint with this Court against the United States of America (hereinafter "USA" or the "Government"). Complaint (Docket No. 1). The Complaint alleged, *inter alia*, that the USA improperly terminated Brickwood's FCI Loretto Water Tower construction contract for default. *See Id.* ¶ 14 at 3. Pursuant to the RCFC, the Government had sixty days to respond to Brickwood's Complaint, but that deadline was delayed until January 25, 2007, because Brickwood's counsel withdrew from the case. *See* Order

Granting Defendant's Motion for Enlargement of Time to File Answer (Docket entry associated with Docket No. 11).

On January 25, 2007, attorney Scott J. Newton, entered an appearance as counsel for Brickwood. Order Granting Motion to Substitute Attorney (Docket entry associated with Docket No. 15).

Also on January 25, 2007, the Government filed a motion to dismiss based solely on lack of subject matter jurisdiction. *See* Motion to Dismiss Pursuant to Rule 12(b)(1) at 3 (Docket No. 16). The Government alleged that Brickwood's claims were barred by the statute of limitations. Brickwood filed its Response on February 21, 2007. Response to Motion to Dismiss Pursuant to Rule 12(b)(1) (Docket No. 17). The Government replied on March 6, 2007. Reply to Response to Motion re: Motion to Dismiss Pursuant to Rule 12(b)(1) (Docket No. 18).

On July 30, 2007, almost ten months after the Complaint was filed, the Court denied the Government's Motion to Dismiss. Published Opinion Denying Defendant's Motion to Dismiss – Rule 12(b)(1); Denying as Moot Plaintiff's Motion for Hearing (Docket No. 20). The Court ordered the Government to answer the Complaint by August 13, 2007. *Id.*

On August 3, 2007, the Government requested an extension of the deadline to file its Answer to the Complaint. *See* Government's Unopposed Motion for Extension of Time Until 9/12/2007 to File Answer Re: Complaint (Docket No. 21). The Court granted the Government's request and extended the deadline for the Government to answer Brickwood's Complaint to September 12, 2007. (Docket entry associated with Docket No. 21). Unable to meet this new deadline, the Government again requested an extension, which the Court granted. *See* Government's *Second* Motion for Extension of Time until 10/12/2007 to File Answer Re: Complaint (Docket No. 23) (emphasis added). The Government ultimately filed its answer to

Brickwood's Complaint on October 12, 2007, more than one year after the case was first brought, and almost two and a half months after its motion to dismiss was denied. *See* Answer to Complaint (Docket No. 24).

On December 3, 2007, the parties filed a Joint Preliminary Status Report. (Docket No. 25). The parties informed the Court that they were engaged in settlement discussions, which they hoped would be completed by the end of December 2007. *Id.* at 3.

On January 16, 2008, the Court issued a Scheduling Order, which set July 31, 2008 as the deadline for completion of discovery. *See* Scheduling Order (Docket No. 27). The Scheduling Order also provided that a five day trial was scheduled to begin on November 10, 2008. *Id.*

On January 31, 2008, Brickwood's attorney, Scott J. Newton, filed a motion to withdraw his representation of Brickwood in this matter. *See* Motion to Withdraw as Attorney by Scott J. Newton and Stephens, Boatwright, Primeau, Cooper & Coleman, PC (Docket No. 28). Mr. Newton notified Brickwood on January 16, 2008 that he planned to file a motion to withdraw if Brickwood did not accept the Government's settlement offer. Kalos Declaration ¶ 14(c).

Between January 22 and 28, 2008, Brickwood wrote several letters to Mr. Newton requesting that he explain the reasons why he intended to withdraw his representation and requesting that he schedule a meeting with the Government regarding their settlement offer. *Id.* at ¶ 14(d). On January 29, 2008, Mr. Newton agreed to stay on as Brickwood's counsel. On January 30, Brickwood requested Mr. Newton's advice on options to replace him if he moved forward with his motion to withdraw. *Id.* at ¶ 14(f). On January 31, Brickwood requested that Mr. Newton wait to file his motion to withdraw to give Brickwood enough time to find a new attorney if he decided to withdraw. *Id.* at ¶ 14(g). When Mr. Newton filed his motion he served Brickwood by mail because he had not obtained Brickwood's consent. *Id.* at ¶ 14(h).

Without waiting for Brickwood's response, which was not due until February 19, 2008, (*see* (Docket entry associated with Motion to Withdraw as Attorney by Scott J. Newton and Stephens, Boatwright, Primeau, Cooper & Coleman, PC, Docket No. 28)), the Court granted Mr. Newton's Motion on February 4, 2008, and ordered Brickwood to retain new counsel on or before March 10, 2008. *See* Order Granting Motion to Withdraw as Attorney (Docket No. 29). The Court also stayed the case pending "Plaintiff's appointment of new counsel." *Id.* The Court's February 4, 2008 Order was served upon Plaintiff by mail, but was subsequently returned to the Court as "undeliverable" on or about February 19, 2008. *See* (Docket entry, 2/19/2008, associated with Docket No. 29).

On February 5, 2008 Brickwood asked Mr. Newton to participate in mediation with the Virginia Bar Association. Kalos Declaration ¶ 14(k). Despite having withdrawn from the case, Mr. Newton continued to act as Brickwood's attorney -- writing to opposing counsel on its behalf on February 5, 2008 and issuing a subpoena on February 7, 2008. *Id.* at ¶ 14(j). In fact, Brickwood did not learn that Mr. Newton's request for withdrawal was granted until February 22, 2008 when Brickwood received a letter sent by Mr. Newton. Enclosed in that letter was a copy of the Court's Order, together with a document stating that Mr. Newton had withdrawn the February 7th subpoena and was withdrawing as Brickwood's counsel. *Id.* at ¶¶ 14(m) and (n).

Brickwood began searching for a new attorney before it was aware that the Court had granted Mr. Newton's Motion to Withdraw. Brickwood first attempted to locate new counsel by contacting attorneys listed at the website "www.lawyers.com," as well as attorneys listed with the Virginia Bar Association. *Id.* at ¶ 14(o). Brickwood contacted the Law Offices of Anthony W. McLaughlin, P.C. for representation, but that firm ultimately declined to take the case. *Id.* at ¶ 14(q). On March 3, 2008, Brickwood contacted the law firm of Vorys, Sater, Seymour, and

Pease, LLP ("Vorys Firm"). On March 5, 2008, prior to the March 10 deadline for the substitution of counsel originally set by the Court, Mr. Hilary S. Cairnie of the Vorys Firm contacted the Court's chambers to inform the Court that he would need an enlargement of the Court's deadlines in order to enter his appearance. *See* Order (Docket No. 32). Mr. Cairnie agreed to take the case, but ultimately, Brickwood did not retain him because of a potential conflict of interest. Kalos Declaration ¶ 14(r).

Between March 2 and April 11, 2008, Brickwood made numerous calls to attorneys located through the Guide to Lawyers in Northern Virginia. *Id.* at ¶ 14(s). Most of the attorneys Brickwood contacted considered the case too complex to agree to representation without an extensive and time consuming review of the merits of the case. Others declined due to conflicts of interest. *Id.* During this time period, Brickwood contacted the following attorneys and/or law firms to seek representation: Blank Rome, LLP; Watson & Renner; Michael Trevelline; Bravitt C. Manley; Cyrus E. Phillips, IV; Legum & Welk, PLC; Gerald E. Baker; and Claude T. Compton. *Id.*

On March 7, 2008, Veron Kalos contacted the Court to request a four week extension of the Court's March 10, 2008 deadline by which Brickwood was to retain new counsel. *See* Order (Docket No. 33). Mrs. Kalos was ordered to inform the Court whether the Government would oppose her request for an extension of time. *Id.* Later that day, Mrs. Kalos informed the Court that the Government had agreed to a two-week extension of the deadline. *See* Scheduling Order (Docket No. 34). The Court granted Brickwood a two-week extension, until March 24, 2008, for the appointment of counsel and in so doing stated that it would issue an Order to Show Cause why the case should not be dismissed if Brickwood did not obtain a new attorney by that date. *Id.* A copy of the Order was sent to Brickwood's post office box via certified mail. *Id.*

Brickwood receives mail both at its business address and at a post office box in Manassas, Virginia. Kalos Declaration ¶ 8. Certified mail is sent to the post office. When certified mail arrives at the post office, the post office places a ticket in the recipient's post office box. The ticket notifies the recipient that correspondence must be retrieved during the post office's normal business hours by signing an acknowledgment of receipt. *Id.* at ¶ 10.

One of Brickwood's part-time employees usually retrieves mail that is sent to Brickwood's post office box; that mail is normally retrieved between five o'clock and six o'clock a.m. and then delivered to either Peter or Veron Kalos later the same day. *Id.* ¶ 9. If a certified mail notification is in the mail, either Mr. or Mrs. Kalos will go to the post office and sign for the mail. *Id.* ¶ 12.

Brickwood did not receive a copy of the order granting the extension until March 25, one day after the deadline. *Id.* ¶ 13(b). On that date, Mrs. Kalos faxed a letter to the Court requesting an additional ten days "to determine if a bonding company [would] represent [it] against the Government's improper termination of [its] contract, or if not, to take the alternate action that would be necessary." *See* Order Returning Unfiled: Faxed letter from plaintiff received March 25, 2008 (Docket No. 36). The Court rejected Mrs. Kalos' request (*id.*), and that same day, issued an Order to Show Cause requiring Brickwood to show, by April 1, 2008, why the case should not be dismissed. Order to Show Cause (Docket No. 35). The Court directed the clerk to deliver, by certified mail, a copy of the Order to Brickwood's previous, and no longer extant, address at 11304 Industrial Road, Manassas, Virginia 20109-3910 and a second copy to Brickwood's post office box at P.O. Box 4685, Manassas, Virginia 20108-4685. *Id.* Brickwood did not receive the Order to Show Cause sent to its P.O. Box until April 12, 2008, (*see* (Docket entry April 15, 2008)), at which time Mrs. Kalos went to the Post Office and retrieved the order.

Kalos Declaration ¶ 13(b). Mrs. Kalos did not receive a copy of the Court's denial of her request for a ten-day extension until April 14, 2008. (Docket entry, April 18, 2008, associated with Docket No. 38).

Mrs. Kalos was referred to undersigned counsel by H. Robert Erwin, an attorney whose practice is located in Baltimore, Maryland. On April 4, 2008, Mrs. Kalos contacted Douglas J. Behr of Keller and Heckman LLP to determine whether he would be interested in representing Brickwood in this case. Kalos Declaration ¶ 14(t). At that time, having not received notice of either the Court's Order to Show Cause or the denial of her request for an extension of time, Mrs. Kalos was not aware that the Court had issued those Orders, much less that the compliance deadlines had already passed. *Id.* On April 18, 2008, Brickwood retained Keller and Heckman LLP in this matter. *Id.*

On April 21, 2008, Mr. Behr contacted Government's counsel, Sean Dunn, to inform him that Mr. Behr had been retained to represent Brickwood in this case and to seek the Government's position in reference to this Motion. Mr. Dunn stated that the Government would oppose a motion for reconsideration.

On April 23, 3008, Mr. Behr filed a Motion to Substitute Attorney in this case.[1] (Docket No. 39).

**APPLICABLE LAW**

RCFC 60(b) provides, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;

[1] Although undersigned counsel was retained on April 23, 2008, counsel was required to wait until its Motion to Substitute Attorney (Docket No. 39) was granted, (*see* (Docket No. 40)) before it was allowed to file the instant Motion.

. . . . The motion shall be made within a reasonable time, and . . . not more than one year after the judgment, order or proceeding was entered or taken." RCFC 60(b).

Under RCFC 60(b)(1) whether a movant has made out a *prima facie* case of "mistake, inadvertence, surprise or excusable neglect," and is therefore entitled to relief from judgment, is judged according to a three factor balancing test. *Orient Overseas Container Line (UK) Ltd. v. United States*, 52 Fed.Cl. 805, 807 (2002). The factors to be analyzed are: (1) whether the movant has a meritorious claim or defense; (2) whether the nonmovant would be prejudiced by the granting of relief; and (3) whether the matter sought to be relieved was caused by the movant's own culpable conduct. *Stelco Holding Co. v. United States,* 44 Fed.Cl. 703, 708-09 (1999); *Information Systems and Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed Cir. 1993) (adopting the three factor balancing test for cases under RCFC 60(b).[2] "No single factor is dispositive. Rather, the court must apply a balancing approach that weighs each factor in light of all the pertinent facts and circumstances." *Orient Overseas*, 52 Fed.Cl. at 807 (citing *Information Systems*, 994 F.2d at 795-96). *See also Stelco Holding*, 44 Fed.Cl. at 709.

"[D]ismissal is considered a harsh sanction for improper conduct." *Advance America Services, Inc. v. United States*, 33 Fed.Cl. 524, 531 (1995). Rule 60(b) "must be given a liberal construction," and "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3rd Cir. 1951). *See also Information Systems*, 994 F.2d at 795. Especially when "no intervening rights have attached in reliance upon the judgment and no actual injustice

---

[2] Because RCFC 60(b) and Fed. R. Civ. P. 60(b) are identical, this Court may look to caselaw interpreting Fed. R. Civ. P. 60(b) to interpret RCFC 60(b). *Curtis v. United States*, 61 Fed.Cl. 511, 412 (2004) (finding counsel's failure to notify the court of his new address, which meant he never received a copy of the opposing party's motion for summary judgment and therefore failed to file an answer within the deadline, to be excusable neglect).

will ensue," the court should be inclined to grant, rather than deny, relief. 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2857 (2d ed. 1995).

## ARGUMENT

### I. Brickwood Contractors, Inc. has a Meritorious Claim.

The requirement of a meritorious claim merely serves to ensure that "vacating the judgment will not be an empty exercise." *Curtis v. United States*, 61 Fed.Cl. 511, 512 (2004); *Orient Overseas Container Line (UK) Ltd. v. United States*, 52 Fed.Cl. 805, 807 (2002). Brickwood is not required to show that its success on the merits is a "virtual certainty," but need merely state "a legally tenable cause of action." *Curtis*, 61 Fed.Cl. at 512 (citing *Stelco Holding Co. v. United States*, 44 Fed.Cl. 703, 709 (1999) (stating that a claim "shall be deemed meritorious if it . . . alleges a set of operative facts which, if proven at trial, would establish [the movant's] entitlement to [judgment in its favor]")). For purposes of this inquiry, the facts as Brickwood alleges them should be taken as true. *See Orient Overseas*, 52 Fed.Cl. at 807. Whether the plaintiff states a meritorious cause of action is a threshold inquiry since without it, further court action would be futile. *Id.* at 810.

On October 10, 2006, Brickwood brought a claim for "Wrongful Termination for Default" against the United States. *See* Complaint at ¶ 4 (Docket No. 1). If the facts as Brickwood avers are taken as true (as they must be) then, on July 23, 2003, the United States accepted Brickwood's bid and awarded Brickwood the contract for Project, Contract Number J20802c-001. *Id.* at ¶ 6. Brickwood and the United States entered into certain modifications to the Contract throughout the duration of the project. *Id.* at ¶ 7. At all times, Brickwood performed and satisfied all of the terms, obligations, duties and conditions of the Contract, as well as the agreed upon modifications thereto, except to the extent excused. *Id.* at ¶ 13. Despite this, on or about June 30, 2005, the Government issued Brickwood a cure notice; on July 28,

2005, a show cause notice; and on October 8, 2005, the Government terminated the contract for default pursuant to Federal Acquisition Regulations ("FAR") Section 52.249-10 (April 1984). *Id.* at ¶¶ 9-12. Brickwood fulfilled all conditions precedent to filing the underlying action, (*id.* at ¶ 16), and claimed that the Government's termination was not substantially justified because Brickwood satisfactorily performed its obligations under the contract, as well as any modifications thereto. *Id.* at ¶ 14. When the facts alleged are taken as true it is clear that Brickwood's claim states a "legally tenable cause of action," *Curtis*, 61 Fed.Cl. at 512, sufficient to meet the RCFC 60(b) requirement of a meritorious claim.

Additionally, the fact that this Court denied the Government's Motion to Dismiss is evidence that Brickwood's Complaint alleges legally tenable causes of action. The Government has, at least implicitly, accepted that Brickwood has stated "a legally tenable cause of action" since it did not challenge the Complaint as failing to state a claim upon which relief may be granted. On January 25, 2007, the Government filed a Motion to Dismiss. Motion to Dismiss Pursuant to Rule 12(b)(1) (Docket No. 16). That Motion was based on only one claim -- that this Court lacked subject matter jurisdiction because Brickwood allegedly filed its claim after expiration of the statute of limitations. The Government chose not to assert that Brickwood had failed to state a claim for which relief could be granted in its Motion, and did not assert such a claim in its Answer, thereby waiving its right to assert such a claim for the present. *See* RCFC 12(b).

**II. Granting the Requested Relief Will Not Prejudice the Government.**

Whether the nonmovant will be prejudiced requires a determination as to whether granting relief under Rule 60(b) "would present any concrete threat of injury to the Government." *Stelco Holding*, 44 Fed.Cl. at 714. Prejudice can result from "the possibility of

loss of evidence or other difficulties in obtaining discovery" or from the "prospect of unfair surprise" to the defendant. *Id.* at 714-715.

Admittedly, the Government has an interest in the finality of a judgment. However, this interest cannot "be meaningfully weighed in the abstract, for the same may be said about any prevailing litigant." *Orient Overseas*, 52 Fed.Cl. at 808 (citing *Stelco Holding*, 44 Fed.Cl. at 709). Without more, this interest "does not have great force." *Id.*

*In toto*, the Court allowed Brickwood 49 days to replace its counsel. The case was dismissed only 19 days ago. *See* Order of dismissal (Docket No. 37). Any claim by the Government that it would be prejudiced by reinstatement of this case due to the amount of time the case has been delayed, or that has passed since the Order of dismissal was entered, would therefore be fatuous at best. The Government finally filed its Answer on October 12, 2007, having requested and received, extensions of the deadline amounting to two months. Unopposed Motion for Extension of Time until 9/12/2007 to File Answer re Complaint (Docket No. 21); Second Motion for Extension of Time until 10/12/2007 to File Answer (Docket No. 23). Given the Government's liberal use of extensions in this case, a delay of only 19 days cannot realisticaly present any concrete threat of injury to the Government.

Additionally, there is no more possibility of loss of evidence or other difficulty in obtaining discovery if this case is reinstated than there would be if the case had never been dismissed. Brickwood had served its initial disclosures on the Defendant to ensure the identification of the types of relevant evidence to be preserved. *See* Scheduling Order (Docket No. 27) (setting the deadline for Plaintiff's and Defendant's Expert Witness Disclosures as April 1, 2008, and April 30, 2008, respectively). The Government should not have destroyed any of its evidence in the 13 days between the entry of the dismissal order and having been notified of

counsel's retention, since Brickwood still had ample time to appeal the dismissal. *See* RCFC 58.1; Fed.R.App.Pro. 3, 4(a)(1)(B) (Brickwood has until June 3, 2008, to notice its appeal).

Finally, reinstatement of this case would not present the prospect of unfair surprise to the Government. On April 21, 2008 undersigned counsel spoke to Sean Dunn, counsel for the Government, by telephone and informed Mr. Dunn that Brickwood intended to file the instant motion. Thus the Government is on notice of the filing of this motion and reinstatement of the case will not result in unfair surprise to it.

## III. The Order of Dismissal was not Caused by Brickwood Contractors, Inc.'s own Culpable Conduct.

There is no single definition of 'culpable conduct' for purposes of an RCFC 60(b) motion. *Orient Overseas*, 52 Fed.Cl. at 809. *See also Stelco Holding*, 44 Fed.Cl. at 715 (stating that there is "no clear, consistent and obligatory standard of conduct that is deemed 'culpable' under Rule 60(b)(1)"). The inquiry focuses on the "willfulness of the defaulting party and whether that party intended to violate court rules and procedures." *Orient Overseas,* 52 Fed.Cl. at 808-809. *See also Information Systems*, 994 F.2d at 796-797 (declining to adopt the rule, followed only by the Ninth Circuit, that a party's conduct is culpable if it merely has notice of the claim against it and fails to file an answer). "What is excusable neglect and what is inexcusable neglect can hardly be determined in a vacuum." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3rd Cir. 1951). Instead, the court must engage in a "fact-intensive, case-specific 'balancing approach,' 'taking account of all relevant circumstances surrounding the party's omission.'" *Pioneer Investment Services Co. v. Brunswick Associates Ltd.* 507 U.S. 380, 395 (1993). "Thus, every Rule 60(b)(1) case is *sui generis*, and black-letter definitions of 'culpable' conduct are unlikely to evolve." *Stelco Holding*, 44 Fed.Cl. at 716.

Certain actions, or inactions, have been deemed not culpable conduct. These include default due solely to intervening circumstances beyond the reasonable control of the litigant and ordinary negligence on the part of the movant. *Id. See also Information Systems*, 994 F.2d at 796 (holding that a party's failure to file an answer to a counterclaim and failure to move to vacate the entry of default prior to the entry of default judgment did "not establish a willful disregard for the court's rules and procedures, merely negligence"). The court must, therefore, conduct a "careful inquiry" into the degree of fault of the movant's conduct, "including whether there were any mitigating or aggravating circumstances." *Stelco Holding*, 44 Fed.Cl. at 716.

For purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. *Pioneer*, 507 U.S. at 393.[3] *See also Information Systems*, 994 F.2d at 796 (stating that "[i]f negligence can come within the definition of excusable neglect, mere failure to answer after receiving notice of a counterclaim can also.") Further, in analyzing Bankruptcy Rule 9006(b)(1), which contained identical "excusable neglect" language to Rule 60(b)(1), the Supreme Court has noted that "enlargement of prescribed time periods under the 'excusable neglect' standard . . . is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer*, 507 U.S. at 391.

Under Rule 60(b) a movant should explain why the mistake was originally made. *Orient Overseas*, 52 Fed.Cl. at 809.

---

[3] In analyzing whether a party's neglect of a deadline was excusable, the Supreme Court used an equitable test, "taking account of all relevant circumstances," including "the danger of prejudice to [the adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395.

Brickwood did not willfully or intentionally violate the Court's rules and procedures by failing to meet its March 24, 2008, deadline for appointment of counsel or its April 1, 2008, deadline for response to the Order to Show Cause. Mr. Newton notified Brickwood on January 16, 2008 that he was going to file a motion to withdraw if Brickwood did not accept the Government's settlement offer. Kalos Declaration ¶ 14(c). Thereafter, between January 22 and 28, 2008 Brickwood wrote to Mr. Newton several times asking him to explain his reasons for withdrawal and requesting a meeting with the Government regarding their settlement offer. *Id.* at ¶ 14(d). On January 29, 2008 Mr. Newton agreed to stay on as Brickwood's counsel. *Id.* at ¶ 14(e). On January 30, Brickwood again approached Mr. Newton requesting advice on the type of attorney it should seek if Mr. Newton decided to withdraw, (*id.* at ¶ 14(f)) and on January 31, requested that Mr. Newton give Brickwood time to find new counsel if he did decide to withdraw. *Id.* at ¶ 14(g).

On February 4, 2008, the Court granted Mr. Newton's request to withdraw. Order Granting Motion to Withdraw as Attorney (Docket No. 29). On February 5, 2008, Brickwood asked Mr. Newton to participate in mediation with the Virginia Bar. Kalos Declaration ¶ 14(k). Despite having withdrawn from the case, Mr. Newton continued to act as Brickwood's attorney - writing to opposing counsel on its behalf on February 5, 2008, and issuing a subpoena on February 7, 2008. *Id.* at ¶ 14(j). On February 20, 2008, having received no response to its request for mediation, Brickwood again contacted Mr. Newton. *Id.* at ¶ 14(l).

During this time, Brickwood was also attempting to find other counsel. *Id.* at ¶ 14(o). The Law Offices of Anthony W. McLaughlin, P.C. declined to take the case. On March 3, 2008, Brickwood contacted the Vorys Firm. Mr. Hilary S. Cairnie, while considering taking the case, contacted the Court to request an extension of applicable deadlines on or about March 5, 2008.

*Id.* at ¶ 14(r). *See also* Order (Docket No. 32). The Vorys Firm ultimately agreed to take the case but, perceiving a potential conflict of interest, Brickwood declined their offer. *Id.*

Between March 2, 2008 and April 11, 2008, Brickwood made numerous calls to attorneys using the Guide to Lawyers Northern Virginia; the Prince William County Bar Association; and www.lawyers.com on the Internet. *See id.* at ¶¶ 14(o), (p), and (s) . Many considered the case too complex to agree to representation without extensive review of the merits. Others declined due to conflicts of interest. *Id.* at ¶ 14(s). During this period, the attorneys and/or law firms contacted included: Blank Rome, LLP; Watson & Renner; Michael Trevelline; Bravitt C. Manley; Cyrus E. Phillips, IV; Legum & Welk, PLC; Gerald E. Baker; and Claude T. Compton. *Id.*

Furthermore, Brickwood did not willfully or intentionally violate the Court's rules and procedures by failing to meet its April 1, 2008, deadline for response to the Order to Show Cause. This Court directed that the Order to Show Cause be sent by certified mail to: (1) Brickwood Contractors, Inc., c/o Peter Kalos, President, 11304 Industrial Road, Manassas, VA 20109-3910; and (2) Brickwood Contractors, Inc., c/o Peter Kalos, President, P.O. Box 4685, Manassas, VA 20108-4685. *See* Order to Show Cause (Docket No. 36). Brickwood had moved from the 11304 Industrial Road address and, after the move, the street had been renumbered so that 11304 no longer existed. Kalos Declaration ¶ 5. Furthermore, Brickwood did not receive notification that certified mail had been delivered to its post office box until April 12, 2008. *Id.* at ¶ 13(b). On that date Brickwood picked up the certified mail from its post office box and, for the first time, received notification of the Order to Show Cause.

Between January 16, 2008 and March 24, 2008 Brickwood attempted in good faith to meet this Court's March 24th deadline by making numerous attempts to retain substitute counsel.

Its failure to meet the Court's April 1 deadline was due to excusable neglect and was not a willful act on its part. Since Brickwood did not intend to violate court rules and procedures its Motion for Reconsideration should be granted and this Court should reinstate its case.

**IV. The Balance of Equities Favors Relief Under Rule 60(b).**

Rule 60(b) is to be "liberally construed for the purpose of doing substantial justice." *Curtis*, 61 Fed.Cl. at 512. Relief from judgment will be granted when the "substantial rights" of the party have been harmed by the judgment. *Id.* To be meaningful, the balancing test must be more than simply a "mathematical assessment of where the majority of the three determinative factors lies. Instead, the court must carefully weigh all of the pertinent facts and circumstances and use its informed discretion to determine whether" the movant is deserving of relief under Rule 60(b). *Stelco Holding*, 44 Fed.Cl. at 723. For purposes of the balancing test, the first factor "is a threshold inquiry rather than a factor entitled to substantial consideration in the court's determination of the equities." *Id.*

Dismissal of a suit never heard on its merits is a "drastic step normally to be taken only after unfruitful resort to lesser sanctions." *Jackson v. The Washington Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir. 1977). Although the decision is within the discretion of the trial court, such discretion "hardly comprehends a pointless exaction of retribution." *Id. See also Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980) ("[A] technical error or a slight mistake . . . should not deprive plaintiff of an opportunity to present the true merits of his claim.") A court's discretion to deny a Rule 60(b) motion may be limited where denial would preclude consideration of the merits of the claim. *See Spann v. Commissioners of the District of Columbia,* 443 F.2d 715, 716 (D.C.Cir. 1970). Indeed, when the merits of the case have never been considered, there is "much more reason for liberality" than when there has been a full trial on the merits. 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2857 (2d ed. 1995). In that

circumstance, "the discretion of the trial court to deny [the motion] is limited," and any "doubt should be resolved in favor of [granting the motion]." *Id.* Indeed, Rule 60(b) is a remedial rule that should be liberally construed especially where the order of dismissal has foreclosed a trial on the merits of a claim. *See Spann,* 443 F.2d at 716.

Brickwood has clearly met the threshold requirement of a meritorious claim. Particularly when the facts alleged are taken as true, which they must be for purposes of this Motion, Brickwood states a tenable claim. Furthermore, the Government has implicitly recognized the validity of Brickwood's claims by not including any substantive grounds in its Motion to Dismiss. The Government will clearly not be prejudiced by the reinstatement of this action. To date, the Government has requested, and received, three extensions of time to meet its various deadlines in this case, amounting to 103 days. A delay of only 19 days can, therefore, not be seen as prejudicial to the Government. The Government cannot claim it has lost evidence or witnesses nor that it will have difficulties obtaining discovery due to the limited delay occasioned by the dismissal of this case since the time for filing an appeal has not yet expired. Finally, there is no risk of unfair surprise to the Government if the case is reinstated since counsel for Brickwood contacted counsel for the Government on April 21, 2008 and notified them of Brickwood's intent to file the instant motion.

Instead, failure to reinstate this case will be highly prejudicial to Brickwood. Brickwood has never had the opportunity to have its claim heard on the merits and since a decision on the merits is preferable to a technical dismissal of the action, Brickwood's claim should be reinstated.

Finally, Brickwood has not intentionally and willfully violated this Court's rules and orders but instead has attempted to comply with those orders in good faith. Between the time of

its prior counsel's withdrawal and this Court's order to show cause, Brickwood tried to retain new counsel in this matter. Furthermore, Brickwood was unable to comply with this Court's Order to Show Cause since it did not receive that Order until after the case was dismissed.

Brickwood's good faith actions and the lack of prejudice to the Government clearly weigh in favor of reinstating the present action and allowing Brickwood to be heard on the merits of its claim. *See Information Systems and Networks Corp. v. United States*, 994 F.2d 792 (Fed.Cir. 1993); *Curtis v. Untied States*, 61 Fed.Cl. 511 (2004); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3rd Cir. 1951).

**CONCLUSION**

For the foregoing reasons, Brickwood Contractors, Inc. respectfully requests that this Court reconsider its April 3, 2008 Order of Dismissal and reinstate the present action.

Respectfully Submitted,

s/ Douglas J. Behr

Douglas J. Behr
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel.: (202) 434-4100
Facsimile: (202) 434-4646
Email: behr@khlaw.com

# APPENDIX

# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BRICKWOOD CONTRACTORS, INC.,<br>Plaintiff, | ) | |
| v. | ) | Case No.: 1:06-cv-695-MMS |
| UNITED STATES OF AMERICA,<br>Defendant. | ) | |

**DECLARATION OF VERON KALOS IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO 28 U.S.C. § 1746**

I, Veron Kalos, do hereby declare, under penalty of perjury, the following:

1. I own a 51% share of Brickwood Contractors, Inc. ("Brickwood"), a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located at 11306 Industrial Road, Manassas, Virginia 20109. Peter Kalos, my husband, owns the remaining 49% share of Brickwood.

2. Myself and Peter Kalos are the only two corporate officers of Brickwood. Peter Kalos is President of Brickwood and I am the Secretary and Treasurer. We are the only full-time employees of Brickwood Contractors, Inc.

3. Brickwood is classified as a small, woman-owned business, for purposes of contracting with Federal, State and Local governments. The contract at issue in this litigation was a small business set-aside contract.

4. Brickwood performs, among other things, underwater steel repair and coatings, the installation and repair of drinking water systems in accordance with Federal and State drinking water standards, and specializes in the repair of corroded steel.

5. Brickwood was originally located at 11304 Industrial Road, Manassas, VA 20109. In or about December 2006, Brickwood relocated to 11306 Industrial Road, Manassas, VA 20109.

After December 2006, the parcels of land on Industrial Road were renumbered and, as a result of the renumbering, the address 11304 Industrial Road no longer exists and any mail sent to that address is returned to sender as undeliverable. *See e.g.*, Letter from Scott J. Newton to Peter Kalos of February 11, 2008, attached hereto as Exhibit ("Ex.") 1-A.

6. In addition to me and Peter Kalos, Brickwood employs five part-time employees.

7. Brickwood's current estimated annual profits are $300,000.

8. Brickwood receives mail at both its business address and at Post Office Box 4685, Manassas, Virginia 20108-4685 ("Brickwood's P.O. Box").

9. Mail that is delivered to the post office box is usually retrieved by one of our part-time employees between 5:00 a.m. and 6:00 a.m., before the post office opens. The mail is subsequently delivered to me or Peter during the work day. Otherwise, either I or Peter will retrieve the mail from the post office box.

10. Certified mail, return receipt requested, is delivered to the post office. The post office puts a card in the box that directs us to retrieve the certified letter from the post office window during normal business hours. To receive certified mail addressed to the post office box, either I or Peter must sign an acknowledgement of receipt.

11. When an employee retrieves such mail from the post office box, the employee gives it to either me or Peter. Either I or Peter will then go to the post office at a later time to sign for and retrieve the certified mail. Thus there is usually a significant time lag until we are able to sign for and retrieve certified mail notices.

12. When either I or Peter retrieves mail from the post office containing a certified mail notice, we will usually wait for the post office to open so we can sign for and retrieve the certified mail.

13. It is my understanding that this Court has dismissed the above-referenced case because Brickwood failed to timely retain counsel in the above-referenced matter and because Brickwood failed to respond to the Court's Order to Show Cause (Docket No. 35). Brickwood sets forth the following reasons why it did not knowingly fail to comply with the Court's deadlines:

(a) The Court's March 7, 2008 Scheduling Order, (Docket No. 34) ("Scheduling Order"), required Brickwood to retain new counsel and file a motion to substitute counsel pursuant to RCFC 83.1(c)(4) by March 24, 2008. On or about March 7, 2008, the Court's judicial assistant, Ms. Beryl Sanders, contacted me by phone and notified me that Brickwood would be receiving an Order in the mail regarding its request for an extension of time to retain new counsel. To the best of my recollection, Ms. Sanders did not specify the date by which Brickwood was required to retain new counsel, but she did notify me that an order to show cause would be issued if we did not retain counsel. Based on my conversation with Ms. Sanders, my understanding was that if the Court issued an Order to Show Cause, Brickwood would have additional time to respond to such Order. The Scheduling Order was delivered via certified mail, with return receipt requested, to Brickwood's P.O. Box and was not retrieved from the post office until March 25, 2008, one day after the expiration of the Court's March 24, 2008 deadline.

(b) Having obtained the Court's Scheduling Order a day after the deadline expired, I faxed a letter to the Court on March 25, 2008 attempting to explain Brickwood's delay in finding new counsel and requesting a ten day extension to obtain counsel. In an Order dated March 25, 2008 (Docket No. 36), the Court rejected my letter and directed me to comply with the Court's Order to Show Cause (Docket No. 35). The Court's Order of March 25, 2008 (Docket No. 36) was mailed to Brickwood's P.O. Box. The Order to

Show Cause (Docket No. 35), which required Brickwood to show cause why the case should not be dismissed by April 1, 2008, was mailed to Brickwood's P.O. Box and to Brickwood's former mailing address (11304 Industrial Road), which has not been in existence since in or about December 2006. Brickwood did not receive the Court's Order to Show Cause until April 12, 2008, nor did it receive the Court's March 25, 2008 Order rejecting my letter until April 14, 2008. Since Brickwood did not receive either of the Court's March 25, 2008 Orders until 11 days after the expiration of the deadline for Brickwood to comply with the Order to Show Cause, Brickwood did not knowingly fail to comply with the Court's Show Cause Order.

(c) The Court mailed its Order dismissing the case (Docket No. 37) to the following address:

Brickwood Contractors, Inc.
c/o Peter Kalos, President
11306 Industrial Road, P.O. Box 4685
Manassas, VA 20108-4685

To the best of my knowledge, Brickwood did not receive the Order of dismissal at its business address. Due to the delay in receiving certified mail as described above in ¶ 9, Brickwood did not receive notice from the Court that its case was dismissed until April 21, 2008, because it was apparently only delivered to Brickwood's P.O. Box and was not retrieved until April 21, 2008.

14. Despite Brickwood's unknowing failure to comply with the Court's deadlines due to the circumstances described in ¶¶10-12, above, the following facts and circumstances demonstrate that Brickwood was acting in good faith not only to convince its attorney from withdrawing his representation, but also, and alternatively, to acquire new counsel:

(a) In or about October, 2007, Brickwood and the Government entered into discussions to settle the case.

(b) In or about October, 2007, the Government made a tentative settlement offer.

(c) On January 16, 2008, Scott J. Newton, Brickwood's then counsel of record, informed Brickwood of his intention to file a Motion to Withdraw as counsel for Brickwood if Brickwood did not accept the Government's settlement offer. *See* Letter from Scott J. Newton to Veron Kalos of January 16, 2008, attached hereto as Ex. 1-B.

(d) Brickwood wrote to Mr. Newton several times from January 22 – 28, 2008 requesting that he explain his reasons for withdrawing as counsel for Brickwood; requesting that he set up a meeting with the Government to discuss its settlement offer; requesting that he advise Brickwood on the ramifications of his withdrawal from the case; and requesting that he provide Brickwood time to retain new counsel prior to his withdrawal. *See* Letters from Peter Kalos to Scott J. Newton of January 25, 28 and 31 2008, attached hereto as Exhibits 1-C, 1-D, and 1-E respectively; Letter from Veron Kalos to Scott J. Newton of January 30, 2008, attached hereto as Ex. 1-F.

(e) On January 29, 2008, Mr. Newton informed me that he would stay on as Brickwood's counsel.

(f) On January 30, 2008, Brickwood again wrote to Mr. Newton asking for his advice regarding the type of attorney it should retain if Mr. Newton decided to withdraw in the future.

(g) On January 31, 2008, Brickwood asked Mr. Newton to postpone filing his motion to withdraw until Brickwood had had time to retain new counsel.

(h) Mr. Newton filed his Motion to Withdraw on January 31, 2008. At that time, he mailed a copy of the motion to Brickwood.

(i) In February 2008, Brickwood continued its attempts to clarify Mr. Newton's reasons for withdrawing from the case and reiterated that such withdrawal would significantly prejudice Brickwood in the prosecution of its case. *See* Letter from Veron Kalos to Scott J. Newton of February 5, 2008, attached hereto as Ex. 1-G; *See* Letter from Peter Kalos to Scott J. Newton of February 20, 2008, attached hereto as Ex. 1-H (without enclosures).

(j) Despite having withdrawn from the case, Mr. Newton continued to act as Brickwood's attorney – writing to opposing counsel on its behalf on February 5, 2008 (*see* Letter from Scott J. Newton to Sean M. Dunn of February 5, 2008, attached hereto as Ex. 1-I) and issuing a subpoena on February 7, 2008 (*see* Subpoena to David Necker, Surety Consultants, of February 7, 2008, attached hereto as Ex. 1-J).

(k) On February 5, 2008, Brickwood again contacted Mr. Newton and asked him to participate in mediation with the Virginia Bar Association.

(l) On February 20, 2008, having received no response to its request for mediation, Brickwood again contacted Mr. Newton. *See* Ex. 1-H.

(m) Brickwood did not learn that Mr. Newton's Motion to Withdraw had been granted until it received a copy of the Order, mailed by Mr. Newton on February 22, 2008. Included in that mailing was a document stating that Mr. Newton had withdrawn the subpoena he had served on February 7, 2008. *See* Letter from Scott Newton to David Necker of February 11, 2008 attached hereto as Ex. 1-K.

(n) On February 22, 2008, Brickwood learned that Mr. Newton's Motion to Withdraw was granted by the Court. *See* Email from Veron Kalos to Anthony W. McLaughlin of February 22, 2008, attached hereto as Ex. 1-L.

(o) Prior to learning of Mr. Newton's withdrawal, Brickwood began its attempt to locate new counsel. It contacted attorneys listed at the website www.lawyers.com as well as attorneys listed with the Virginia Bar Association.

(p) Brickwood also contacted a number of attorneys and law firms to try and immediately retain counsel. *See* Email exchange between Veron Kalos and Anthony W. McLaughlin from February 22, 2008 – March 19, 2008, attached hereto as Ex. 1-M.

(q) The Law Offices of Anthony W. McLaughlin, P.C. declined to take the case. However, Mr. McLaughlin agreed to assist Brickwood in obtaining new counsel. *See* Ex. M.

(r) On March 3, 2008 Brickwood contacted Vorys, Sater, Seymour, and Pease, LLP. Vorys, Sater counsel, Mr. Hilary S. Cairnie, while considering taking the case, contacted the court requesting an extension of applicable deadlines on or about March 5, 2008. *See* Order, (Docket No. 32). Although Mr. Cairnie agreed to take the case, Brickwood ultimately did not retain Mr. Cairnie because it perceived a potential conflict.

(s) Between March 2, 2008 and April 11, 2008 Brickwood made numerous calls to attorneys located through the Guide to Lawyers Northern Virginia. Many considered the case too complex to agree to representation without extensive review of the merits. Others declined due to conflicts of interest. The attorneys contacted included: Blank Rome, LLP; Watson & Renner; Michael Trevelline; Bravitt C. Manley; Cyrus E. Phillips, IV; Legum & Welk, PLC; Gerald E. Baker; and Claude T. Compton.

(t) On April 4, 2008, Mrs. Kalos contacted Douglas J. Behr at the offices of Keller and Heckman LLP requesting representation. At that time, having not received notice of either the Court's Order to Show Cause or Its denial of her request for an extension, Mrs. Kalos did not know that such Order had been issued or that the deadline for compliance with it had passed.

(u) On April 18, 2008, Brickwood retained Douglas J. Behr of Keller and Heckman LLP to represent it in the above-captioned case.

I HEREBY DECLARE UNDER PENALTY OF PERJURY that the foregoing is true and correct to the best of my knowledge.

Executed this 29th day of April, 2008.

Veron Kalos
Secretary and Treasurer
Brickwood Contractors Inc.
11306 Industrial Road
Manassas, VA 20109

# EXHIBIT 1-A

Law Offices
**Stephens, Boatwright, Primeau, Cooper & Coleman**
A Professional Corporation
9255 Lee Avenue
Manassas, Virginia 20110-5514

WILLIAM R. STEPHENS
RICHARD H. BOATWRIGHT
JOHN D. PRIMEAU
ROBERT M. COOPER, JR.
ROBERT P. COLEMAN

C. SHAWN ALLEN
SCOTT J. NEWTON

Telephone
(703) 361-8246
Facsimile
(703) 361-4171
E-mail
sbpc@manassaslaw.com
Website
manassaslaw.com

February 11, 2008

Peter Kalos
Veron Kalos
P.O. Box 4685
Manassas, VA 20108-4685

**RE:** Brickwood Contractors, Inc. v. The United States
U.S. Court of Federal Claims

Dear Peter & Veron:

Please find enclosed a letter dated February 4, 2008 with Defendant's Initial Disclosures and a copy of the documents provided with those initial disclosures that were sent to the 11304 Industrial Road, Manassas, Virginia 20109 address. This letter and enclosures were returned to us undeliverable. I am resending them to your post office box.

Please call if you have any questions.

Sincerely,

Scott J. Newton /TLH

Scott J. Newton

Enclosures as stated
SJN/tlh

# EXHIBIT 1-B

Law Offices
**Stephens, Boatwright, Primeau, Cooper & Coleman**
A Professional Corporation
9255 Lee Avenue
Manassas, Virginia 20110-5514

WILLIAM R. STEPHENS
RICHARD H. BOATWRIGHT
JOHN D. PRIMEAU
ROBERT M. COOPER, JR.
ROBERT R COLEMAN

C. SHAWN ALLEN
SCOTT J. NEWTON

Telephone
(703) 361-8246
Facsimile
(703) 361-4171
E-mail
sbpc@manassaslaw.com
Website
manassaslaw.com

January 16, 2008

VIA US MAIL AND FACSIMILE: 703-392-0229

Veron Kalos
Brickwood Contractors, Inc.
PO Box 4685
Manassas, VA 20108-4685

RE: Brickwood Contractors, Inc. v. The United States
U.S. Court of Federal Claims

Dear Veron:

Enclosed please find a Scheduling Order entered by the Court on January 16, 2008. My understanding from our last telephone call is that you are considering the potential settlement offer from the United States. I am hopeful that you will give me a positive response to this settlement offer when I return from my vacation on January 30, 2008. As I stated in my previous letter I intend to file a Motion to Withdraw on January 31, 2008.

Sincerely,

Scott J. Newton /TLH

Scott J. Newton

Enclosure
SJN/tlh

# In the United States Court of Federal Claims

No. 06-695 C

(Filed: January 16, 2008)

| | |
|---|---|
| **BRICKWOOD CONTRACTORS, INC.,** Plaintiff, | |
| v. | |
| **THE UNITED STATES,** Defendant. | |

## SCHEDULING ORDER

The Court hereby ORDERS the following schedule for discovery and trial in this case:

| | |
|---|---|
| RCFC 26(a)(1) Initial Disclosures (including exchange of documents) | January 30, 2008 |
| Commencement of Discovery (fact & expert) | January 30, 2008 |
| Plaintiff's Expert Witness Disclosures | April 1, 2008 |
| Defendant's Expert Witness Disclosures | April 30, 2008 |
| Completion of Discovery (fact & expert) | July 31, 2008 |
| Joint Status Report (report should discuss dispositive motions to be filed, if any) | August 7, 2008 |
| Post-Discovery Status Conference (11:00 a.m.) | August 14, 2008 |
| Trial (five days, Washington, D.C.) | November 10, 2008 |

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

# EXHIBIT 1-C

BCI
**BRICKWOOD CONTRACTORS, INC.** (703) 392-0228
Post Office Box 4685 *fax* (703) 392-0229
Manassas, Virginia 20108-4685

FAXED

January 25, 2008

*via fax to (703) 361-4171*
*Two (2) Copies Total*

Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

Dear Scott:

RE: Brickwood vs. FBOP

Veron dropped off copies of our files today, see attached cover letter.

I do request you set up a meeting for us to discuss settlement with the Government.

Sincerely,

Peter Kalos
President

# EXHIBIT 1-D

**BCI**
**BRICKWOOD CONTRACTORS, INC.**
Post Office Box 4685
Manassas, Virginia 20108-4685
(703) 392-0228
*fax* (703) 392-0229

January 28, 2008

FAXED

*via fax to (703) 361-4171*
Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

Dear Scott:

**RE: Brickwood vs. FBOP, Your Withdrawal**

I do not agree that we must accept a no-cost convenience termination from the Government. We sued the Government for improperly terminating our contract for default. The Government agrees.

As discussed, we believed United States Surety Company (USSC) was the cause of the cost we incurred from the improper termination. USSC says our surety, Greenwich Insurance Company, bought reinsurance from them. However, as you know, on September 6, 2007, USSC sent a proposed settlement agreement to the Bureau of Prisons. Per your communications with the Bureau's attorney, this agreement may affect us.

We do not know how this agreement affects us, or if the Bureau even signed it. In any case, this happened during your representation, and I do not agree you have a reason to withdraw because of it, or because we cannot accept a no-cost settlement from the Government.

Right now, the Government is giving us an opportunity to settle the issue of our contract termination, and now is the time to act on their request. As per my previous letter, do ask for a meeting with the Government, so we can discuss their desire to settle.

If we cannot settle, and if you tell us the issues you are unable to represent Brickwood on, we can determine an appropriate replacement for you and transfer your representation.

Sincerely,

Peter Kalos
President

# EXHIBIT 1-E

**BCI**
**BRICKWOOD CONTRACTORS, INC.** (703) 392-0228
Post Office Box 4685 *fax* (703) 392-0229
Manassas, Virginia 20108-4685

FAXED

January 31, 2008

*via fax to (703) 361-4171*
*Five (5) Pages Total*
*and via email to newton@manassaslaw.com*

Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

Dear Scott:

RE: Brickwood vs. FBOP, **WITHDRAWAL**

Per your email of yesterday, the Government confirmed they have not cashed the check from United States Surety Company (USSC). Therefore, we have no reason to believe the Government has entered into any agreement with USSC that affects your case. In addition, with the Bureau represented by an attorney now, it is doubtful they will do anything fraudulent.

Per your agreement with Veron of yesterday, we will not change our position in your case unless, and until we have to. We are claiming the Government improperly terminated our contract and we would expect to recover our legal fees in the Court of Federal Claims, unpaid invoice, and settlement expenses.

As per our previous correspondence, we have a lis pendens preventing USSC from selling our Manassas property. This lis pendens is good for at least another 60 days.

Nothing in your case has changed, and you have no reason to withdraw from this case. The Government is trying to delay our receipt of their documents. If the Government believes their termination for default was wrong, or if they do not want us to have their documents, they will convert to a termination for convenience, per FAR Paragraph 52.249-10(c), and our contract with them. Either way, we will be able to save our property.

We cannot let the Government take unfair advantage of us, by delaying your case again, and failing to turn over their documents to us. Your action to withdraw may give them the delay they are looking for, and may cost us our property.

The Judge's Order required initial disclosures "**including exchange of documents**" yesterday. A copy of the Order is enclosed.

We need discovery to begin as Ordered by the Judge. When we see how many documents we have and review them, we will continue to prepare for experts and the rest of this case. If we see evidence of defective specs, we will get an expert in that area. Likewise, if we see something different.

If you still want to withdraw, you must give us time to hire a new attorney and transfer this case, without giving the Government the additional delay they are looking for.

Sincerely,

Peter Kalos
President

# In the United States Court of Federal Claims

No. 06-695 C

(Filed: January 16, 2008)

*******************************************

| | |
|---|---|
| BRICKWOOD CONTRACTORS, INC., | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*******************************************

**SCHEDULING ORDER**

The Court hereby ORDERS the following schedule for discovery and trial in this case:

| | |
|---|---|
| RCFC 26(a)(1) Initial Disclosures (including exchange of documents) | January 30, 2008 |
| Commencement of Discovery (fact & expert) | January 30, 2008 |
| Plaintiff's Expert Witness Disclosures | April 1, 2008 |
| Defendant's Expert Witness Disclosures | April 30, 2008 |
| Completion of Discovery (fact & expert) | July 31, 2008 |
| Joint Status Report (report should discuss dispositive motions to be filed, if any) | August 7, 2008 |
| Post-Discovery Status Conference (11:00 a.m.) | August 14, 2008 |
| Trial (five days, Washington, D.C.) | November 10, 2008 |

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

**FEDERAL ACQUISITION REGULATION**
United States Code of Federal Regulations
Title 48, Chapter 1, Federal Acquisition Regulation (FAR)

PART 52—SOLICITATION PROVISIONS AND CONTRACT CLAUSES
Subpart 52.2—Text of Provisions and Clauses
Subsection 52.249-10 Default (Fixed-Price Construction).

FAR Paragraph 52.249-10(c):

> (c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government.

SECTION: III

| | | |
|---|---|---|
| | | **(15 DAYS PRIOR TO SUBMISSION OF FIRST PAYMENT REQUEST)** |
| 52.233-1 | JUL 2002 | DISPUTES Alternate I (DEC 1991) |
| 52.233-3 | AUG 1996 | PROTEST AFTER AWARD |
| 52.236-2 | APR 1984 | DIFFERING SITE CONDITIONS |
| 52.236-3 | APR 1984 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK |
| 52.236-5 | APR 1984 | MATERIAL AND WORKMANSHIP |
| 52.236-6 | APR 1984 | SUPERINTENDENCE BY THE CONTRACTOR |
| 52.236-7 | NOV 1991 | PERMITS AND RESPONSIBILITIES |
| 52.236-8 | APR 1984 | OTHER CONTRACTS |
| 52.236-9 | APR 1984 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS |
| 52.236-10 | APR 1984 | OPERATIONS AND STORAGE AREAS |
| 52.236-11 | APR 1984 | USE AND POSSESSION PRIOR TO COMPLETION |
| 52.236-12 | APR 1984 | CLEANING UP |
| 52.236-13 | NOV 1991 | ACCIDENT PREVENTION Alternate I (NOV 1991) |
| 52.236-15 | APR 1984 | SCHEDULES FOR CONSTRUCTION CONTRACTS |
| 52.236-17 | APR 1984 | LAYOUT OF WORK |
| 52.236-21 | FEB 1997 | SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION Alternate I (APR 1984) |
| 52.236-26 | FEB 1995 | PRECONSTRUCTION CONFERENCE |
| 52.242-13 | JUL 1995 | BANKRUPTCY |
| 52.242-14 | APR 1984 | SUSPENSION OF WORK |
| 52.243-4 | AUG 1987 | CHANGES |
| 52.244-6 | APR 2003 | SUBCONTRACTS FOR COMMERCIAL ITEMS |
| 52.246-12 | AUG 1996 | INSPECTION OF CONSTRUCTION |
| 52.246-21 | MAR 1994 | WARRANTY OF CONSTRUCTION |
| 52.248-3 | FEB 2000 | VALUE ENGINEERING - CONSTRUCTION |
| 52.249-2 | SEP 1996 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) Alternate I (SEP 1996) |
| * → 52.249-10 | APR 1984 | DEFAULT (FIXED-PRICE CONSTRUCTION) |
| 52.253-1 | JAN 1991 | COMPUTER GENERATED FORMS |

**III.3 52.223-3 HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997) Alternate I (JUL 1995)**

(a) "Hazardous material," as used in this clause, includes any material defined as hazardous under the latest version of Federal Standard No. 313 (including revisions adopted during the term of the contract).

(b) The offeror must list any hazardous material, as defined in paragraph (a) of this clause, to be delivered under this contract. The hazardous material shall be properly identified and include any applicable identification number, such as National Stock Number or Special Item Number. This information shall be included on the Material Safety Data Sheet submitted under this contract.

Material (If none, insert NONE)

______________________________

______________________________

______________________________

Identification No.

______________________________

______________________________

______________________________

(c) This list must be updated during performance of the contract whenever the Contractor determines that any other material to be delivered under this contract is hazardous.

 — Loretto Contract

# EXHIBIT 1-F

BCI
**BRICKWOOD CONTRACTORS, INC.**
Post Office Box 4685
Manassas, Virginia 20108-4685
(703) 392-0228
*fax* (703) 392-0229

January 30, 2008

*via fax to (703) 361-4171*
Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

FAXED

Dear Scott:

RE: Brickwood vs. FBOP
**QUITTING**

I have left at least three voice messages for you to call me, and you have not called.

We want to see what you are filing today, as our Initial Disclosures. If you need anything else from us, call, fax, or email us.

I want to make it clear that we feel you will harm our position with the Government if you file a motion to withdraw tomorrow, and we will have to oppose it. We also need the documents that are due today from the Government.

We cannot accept a no-cost termination, because our losses are over $10 Million, and a settlement by the Government with the supposed, reinsurer of our bond, would mean we may not be able to recover our losses from that company.

We cannot hire a new attorney, until you advise us on the issues we are facing in this lawsuit. We are hoping the payment by USSC is just a breach of contract, in addition to the improper termination that we already have. We certainly have no reason, to want to file fraud against the Government. But this case is what it is, and we cannot change it.

We can agree to replace you when we know what kind of replacement we are looking for, so we need to meet with you first and set a schedule to replace you and amend our lawsuit, if that is what is needed here.

Please do call me as soon as possible.

Sincerely,

Veron Kalos
Secretary/Treasurer
(703) 759-3437 direct

# EXHIBIT 1-G

**BCI** **BRICKWOOD CONTRACTORS, INC.**
Post Office Box 4685
Manassas, Virginia 20108-4685
(703) 392-0228
*fax* (703) 392-0229

February 5, 2008

*via fax to (703) 361-4171*
Two (2) Pages Total

Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

Dear Scott:

**RE: Brickwood vs. FBOP, Case No. 06-695C**

You are asking us to accept the Government's offer of a termination for convenience, and give up our request to be reimbursed for our costs. We cannot accept the Government's offer of a no-cost convenience termination.

If our surety incurred cost for which the Government is liable, this cost is passed on to us, and we must recover our costs. In addition, we have incurred legal fees, including substantial fees paid to your firm. We are entitled to recover these costs, through the presentation of a settlement proposal as plead in our lawsuit. We cannot give up this objective, and it is plead in our lawsuit.

We believe the Government's termination of our contract was improper. As per our response to the Government's cure notice, our inability to complete the work is excusable. If we see evidence of defective specifications in the documents turned over to us by the Government, we anticipate including a defense of defective specifications. We will not know if this is something we must prove, until we receive the documents.

We are puzzled by your comment that our communications have been difficult. We have been very responsive to you. We have responded to you by phone, by email, by fax, and in person. We have come to your office to meet with you, each time you requested it. We have made sure to give you our time, so you can meet your obligations in this lawsuit. We have effectively communicated with you, and you have met all of your obligations in this lawsuit.

Our objectives in this case are to receive the termination for convenience we deserve, and to be able to recover our costs. This is what is plead in this lawsuit. As our attorney, we expect you to assist us in meeting these objectives.

Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.


February 5, 2008

Seeking to withdraw from this lawsuit is prejudicial to us. We request you withdraw your motion and reconsider. As an alternate, we request you participate with us in mediation through the service provided by the Virginia State Bar, or through another service.

In the meantime, we do expect you to meet your professional responsibility to represent us in this case.

Please respond with your thoughts.

Sincerely,

Veron

Veron Kalos
Secretary/Treasurer
703-759-3437 direct

# EXHIBIT 1-H

**BCI**
**BRICKWOOD CONTRACTORS, INC.**
Post Office Box 4685
Manassas, Virginia 20108-4685
(703) 392-0228
*fax* (703) 392-0229

February 20, 2008

Mr. Scott J. Newton
Stephens, Boatwright, Primeau,
Cooper & Coleman, P.C.
9255 Lee Avenue
Manassas, Virginia 20110

Dear Mr. Newton:

**RE: Brickwood vs. FBOP, Case No. 06-695C**

Please provide us with a response to our February 5, 2008 letter to you. A copy is enclosed. As stated in our letter, your motion to withdraw from our lawsuit prejudices us. We again request you withdraw your motion.

Not only is it prudent for us to review the Government's documents for evidence of defective specifications before we hire an expert, we are required to present the evidence to the Contracting Officer and ask for a final decision, before you can add a charge of defective specs to your lawsuit.

You are quitting because we are exercising our contractual right under FAR 49.109-4(b) not to waive any cost we incur in the termination of our contract; and because we are trying to determine if the Government has breached our contractual right under FAR 49.402-6, not to be charged, under our contract account, for excess cost the Government has not incurred.

In contrast to your letters telling us the reason you are quitting, your motion casts serious doubt on the very merits and objectives of our case, and additionally, impugns our integrity.

Your motion is seriously prejudicial to us.

Sincerely,

Peter Kalos
President

(1) Enclosure: Letter Dated February 5, 2008 to Scott J. Newton

# EXHIBIT 1-I

Law Offices
**Stephens, Boatwright, Primeau, Cooper & Coleman**
A Professional Corporation
9255 Lee Avenue
Manassas, Virginia 20110-5514

WILLIAM R. STEPHENS
RICHARD H. BOATWRIGHT
JOHN D. PRIMEAU
ROBERT M. COOPER, JR.
ROBERT P. COLEMAN

C. SHAWN ALLEN
SCOTT J. NEWTON

Telephone
(703) 361-8246
Facsimile
(703) 361-4171
E-mail
sbpc@manassaslaw.com
Website
manassaslaw.com

February 5, 2008

**SENT VIA FACSIMILE ONLY: 202-353-7988**
Sean M. Dunn, Esquire
Commercial Litigation Branch
US Department of Justice
Civil Division
Washington, DC 20530

**RE: Brickwood Contractors, Inc. v. The United States**
**Case No.: 06-695C**
**Chief Judge Edward Damich**
**United States Court of Federal Claims**

Dear Mr. Dunn:

Thank you for your Initial Disclosures and the documents dated February 1, 2008. It is my understanding that there are substantially more documents that are involved in this matter than have been provided to date. My client is respectfully requesting this matter is supplemented and response be provided at your earliest convenience. Please call me at your convenience to discuss this matter.

Sincerely,

Scott J. Newton

cc: [redacted]
SJN/amh

# EXHIBIT 1-J

**FORM 6**
**SUBPOENA**

# United States Court of Federal Claims

Brickwood Contractors, Inc.

vs. *No.* 06-695C

*THE UNITED STATES*

**SUBPOENA**

To: Mr. David Necker
Surety Consultants, Inc.
3913 Pinedale Dr., Baltimore, MD 21236

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above-captioned case.
   *Place of Testimony*: ______
   *Date and Time*: ______
2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
   *Place of Deposition:* ______
   *Date and Time:* ______
3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See attached Exhibit A
   *Place:* SBPC & C, 9255 Lee Avenue, Manassas, VA 20110
   *Date and Time:* ______
4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises:* ______
   *Date and Time:* ______

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] Counsel for Plaintiff 2/7/08
ISSUING OFFICER SIGNATURE, AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

Scott J. Newton, Esq., 9255 Lee Avenue, Manassas, VA 20110 (703) 361-8246
ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 2/7/08 | Manassas, VA 20110 |
| SERVED ON (PRINT NAME) | David Necker | MANNER OF SERVICE: US Mail, First Class |

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: 2/7/08
DATE

Scott [signature]
SIGNATURE OF SERVER

9255 Lee Ave Manassas VA 20110
ADDRESS OF SERVER

RCFC 45.

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**(2)(A)** A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

**(B)** Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

**(3)(A)** On timely motion, the court shall quash or modify the subpoena if it

**(i)** fails to allow reasonable time for compliance;

**(ii)** requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

**(iii)** requires disclosure of privileged or other protected matter and no exception or waiver applies, or

**(iv)** subjects a person to undue burden.

**(B)** If a subpoena

**(i)** requires disclosure of a trade secret or other confidential research, development, or commercial information, or

**(ii)** requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

**(iii)** requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) Duties in Responding to Subpoena.**

**(1)** A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

**(2)** When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

EXHIBIT A – REQUEST TO SUBPOENA

1. Please provide all information in your possession, including but not limited to, the solicitation, specifications, amendments, results, negotiations, discussions, emails, faxes, handwritten notes, etc. regarding bids received on or about April 7, 2006, April 21, 2006, and April 24, 2006, for the project identified as:

   Lead Abatement/Painting
   Elevated Water Tower
   Federal Correctional Facility
   Loretto, Pennsylvania

# EXHIBIT 1-K

Law Offices
**Stephens, Boatwright, Primeau, Cooper & Coleman**
A Professional Corporation
9255 Lee Avenue
Manassas, Virginia 20110-5514

WILLIAM R. STEPHENS
RICHARD H. BOATWRIGHT
JOHN D. PRIMEAU
ROBERT M. COOPER, JR.
ROBERT R COLEMAN

C. SHAWN ALLEN
SCOTT J. NEWTON

Telephone
(703) 361-8246
Facsimile
(703) 361-4171
E-mail
sbpc@manassaslaw.com
Website
manassaslaw.com

February 11, 2008

Mr. David Necker
Surety Consultants, Inc.
3913 Pindedale Drive
Baltimore, MD 21236

RE: Brickwood Contractors, Inc. v. The United States
United States Court of Federal Claims

Dear Mr. Necker:

With respect to the subpoena that was previously served upon you, please be advised that I am no longer counsel for Brickwood Contractors, Inc. You may disregard the subpoena as it was inadvertently sent by my office. I do apologize for any inconvenience this may have caused.

Sincerely,

Scott J. Newton /TLH

Scott J. Newton

Enclosure
SJN/tlh

TOTAL P.04

**EXHIBIT 1-L**

Subj: **Meeting**
Date: 3/6/2008 4:32:47 P.M. Eastern Standard Time
From: awmatty@hotmail.com
To: vkalos@aol.com

Dear Mrs. Kalos:

The meeting is confirmed for tomorrow at 1:30 pm in Washington, DC at the offices of:

Heideman, Nudelman & Kalik, PC
1146 19th St NW
Fifth Floor
Washington, DC 20036
202-463-1818

In addition, I still haven't received copies of the following items that I requested Tuesday:

Copy of Nonsuit Orders for Fairfax Case
Copy of Pleading's for Court of Claims
Copy of Suit Papers for Md. Cases including Judge's ruling

Anthony W. McLaughlin, Esq. 03/06/08

---

From: VKalos@aol.com
Date: Fri, 22 Feb 2008 12:10:40 -0500
Subject: Newton and Fairfax
To: AWMATTY@Hotmail.com

My husband said Newton has been released, and if we do not have a new attorney by March 10th, the Judge said he will send us a show cause, why he shouldn't dismiss without prejudice.

Veron

Attached file names:
Newton.pdf
Fairfax.pdf

---

Delicious ideas to please the pickiest eaters. Watch the video on AOL Living.

=

# EXHIBIT 1-M

Subj: **Meeting**
Date: 3/6/2008 4:32:47 P.M. Eastern Standard Time
From: awmatty@hotmail.com
To: vkalos@aol.com

Dear Mrs. Kalos:

The meeting is confirmed for tomorrow at 1:30 pm in Washington, DC at the offices of:

Heideman, Nudelman & Kalik, PC
1146 19th St NW
Fifth Floor
Washington, DC 20036
202-463-1818

In addition, I still haven't received copies of the following items that I requested Tuesday:

Copy of Nonsuit Orders for Fairfax Case
Copy of Pleading's for Court of Claims
Copy of Suit Papers for Md. Cases including Judge's ruling

Anthony W. McLaughlin, Esq. 03/06/08

---

From: VKalos@aol.com
Date: Fri, 22 Feb 2008 12:10:40 -0500
Subject: Newton and Fairfax
To: AWMATTY@Hotmail.com

My husband said Newton has been released, and if we do not have a new attorney by March 10th, the Judge said he will send us a show cause, why he shouldn't dismiss without prejudice.

Veron

Attached file names:
Newton.pdf
Fairfax.pdf

---

Delicious ideas to please the pickiest eaters. Watch the video on AOL Living.

=

Subj: **Re: Meeting**
Date: 3/19/2008
To: awmatty@hotmail.com

Tony -

Make sure the firms you want to meet with can enter an appearance in the Court of Federal Claims. That has to be our first priority right now.

Veron

In a message dated 3/16/2008 5:48:34 P.M. Eastern Daylight Time, awmatty@hotmail.com writes:

> Dear Mrs. Kalos:
> Please advise whether or not you will be available for a meeting with the lawyers in Washington, DC on Tues. 3/18/08 at 1:30 pm so that I can verify it with them.
>
> Tony McLaughlin, Esq. 03/16/08
>
> =

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2008 a copy of the foregoing Plaintiff Brickwood Contractors Inc.'s Motion for Relief From Judgment Pursuant to Rule 60(b) of the Rules of the United States Court of Federal Claims, Brief in Support thereof, accompanying Declaration and corresponding Exhibits were filed with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Sean Michael Dunn
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW
Room 4046
Washington, DC 20530
Tel.: (202) 616-0338
Facsimile: (202) 353-7998
Email: sean.dunn@usdoj.gov

Attorney for Defendant,
United States of America

s/ Douglas J. Behr
Douglas J. Behr