# In the United States Court of Federal Claims

No. 06-695 C
(Filed: February 20, 2009)

```
*************************************
BRICKWOOD CONTRACTORS, INC.,   *
                               *
            Plaintiff,         *
                               *
v.                             *
                               *
THE UNITED STATES,             *
                               *
            Defendant.         *
*************************************
```

### ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE

On February 4, 2009, the court issued a third Order to Show Cause in the above-captioned case, directing plaintiff to demonstrate why its case should not be dismissed for failure to prosecute pursuant to Rule 41(b) of the Rules of the United States Court of Federal Claims ("RCFC").  Plaintiff had terminated its relationship with the fourth attorney to enter an appearance on its behalf in this matter, Frederic G. Antoun, Jr., once again putting itself in danger of violating RCFC 83.1(a)(3), which requires corporations to be represented by counsel.  Thus, the court informed plaintiff that to avoid dismissal, the response to the Order to Show Cause should be either (1) "a motion to substitute counsel from the new attorney" or (2) a motion from plaintiff's principals–Peter and Veron Kalos–"requesting additional time for plaintiff's new attorney to file a motion to substitute, **along with definitive evidence that plaintiff has retained new counsel**."  Order to Show Cause, Feb. 4, 2009, at 3 (emphasis in the original).  Because plaintiff and its principals have failed to comply with the Order to Show Cause, the court dismisses plaintiff's complaint.

**Procedural History**

Plaintiff filed the instant case on October 10, 2006.  Shortly thereafter, on November 3, 2006, plaintiff's counsel, Mark J. Stone of Katz & Stone, L.L.P, filed a motion for leave to withdraw as counsel due to "irreconcilable differences."  See Mot. Leave Withdraw Counsel, Nov. 3, 2006, at ¶ 1.  Plaintiff subsequently retained Scott J. Newton of Stephens, Boatwright, Primeau, Cooper & Coleman, who ultimately sought leave to withdraw as counsel on January 31, 2008, because he had "reached an impasse" with plaintiff concerning the prosecution of the case and because communications with plaintiff had "rendered the representation unreasonably difficult for counsel."  See Mot. Withdraw Counsel, Jan. 31, 2008, at ¶ 1.  The case was transferred to the undersigned on February 29, 2008.

At the time of transfer, plaintiff was "under court order to retain new counsel and file a motion to substitute counsel by March 10, 2008." See Order, Mar. 5, 2008, at 1. The court subsequently granted plaintiff a two-week enlargement of that deadline. See Order, Mar. 7, 2008. Because plaintiff did not file the required motion to substitute counsel by the enlarged deadline of March 24, 2008, the court issued an Order to Show Cause on March 25, 2008, directing plaintiff to demonstrate why the case should not be dismissed pursuant to RCFC 41(b) for failure to prosecute. See Order to Show Cause, Mar. 25, 2008. The court directed plaintiff to respond to the Order to Show Cause by April 1, 2008, id., but plaintiff failed to do so. Accordingly, on April 3, 2008, the court dismissed plaintiff's complaint pursuant to RCFC 41(b).

Plaintiff subsequently retained Douglas J. Behr of Keller and Heckman LLP to file a motion to substitute counsel and an RCFC 60(b) motion for relief on its behalf, and, if the court granted the RCFC 60(b) motion, to represent it in all future proceedings. See Mot. Substitute Attorney, Apr. 23, 2008, at 1. Plaintiff filed a motion to substitute counsel on April 23, 2008. The court permitted the substitution on April 29, 2008, plaintiff filed the RCFC 60(b) motion on April 29, 2009, and the court granted the motion on May 21, 2008.

Pursuant to the court's direction, the parties filed a joint status report on June 23, 2008, suggesting a schedule for further proceedings, including a schedule for the remaining discovery. The court adopted the parties' suggested schedule in a June 24, 2008 order. However, three months later, on September 26, 2008, Mr. Behr filed a motion for leave to withdraw as counsel, indicating that he had "reached an impasse" with plaintiff concerning the prosecution of the case and that communications with his client had "rendered the representation unreasonably difficult for counsel."[1] See Mot. Leave Withdraw Counsel, Sept. 26, 2008, at ¶¶ 1-2. In a September 29, 2008 order, the court directed that, by October 29, 2008, (1) plaintiff file a motion to substitute counsel or (2) Mr. and Mrs. Kalos file a status report containing a response to the motion to withdraw and "a detailed description of the steps plaintiff has taken to retain new counsel." See Order, Sept. 29, 2008, at 2. Mr. Kalos chose the second option, and submitted a status report on October 29, 2008, which the court filed by its leave on October 31, 2008. See Order, Oct. 31, 2008.

The insufficiencies of the Mr. Kalos's status report led the court to issue a second Order to Show Cause on November 12, 2008. In its order, the court addressed Mr. Kalos's representations about the search for new counsel:

> [I]n his status report, Mr. Kalos stated only that they were interviewing potential counsel. Mr. Kalos did not indicate how many attorneys they were interviewing,

---

[1] In the meantime, on September 4, 2008, Peter and Veron Kalos filed a pro se complaint in this court, seeking various forms for relief related to an allegedly fraudulent surety bond issued in conjunction with the contract at issue in the instant case. See Compl., Kalos v. United States, No. 08-631C.

>    the dates of the interviews, or the likelihood that any of the interviewed attorneys
>    would agree to representation. Because Mr. Kalos did not provide this
>    information, the court affords little weight to his representation that he and Veron
>    Kalos were interviewing potential counsel.

Order to Show Cause, Nov. 12, 2008, at 3-4. The court then indicated that Mr. Kalos's argument that plaintiff required additional time because "Mr. Behr refuses to pursue a litigation strategy urged by Mr. Kalos (i.e., seeking injunctive relief related to the allegedly fraudulent surety bond) despite being 'fully appraised of, and in concurrence with[,] the circumstances of this case' at the time he was hired," was unpersuasive. Id. at 4. As the court explained, plaintiff "believed that the surety bond was fraudulent well in advance of plaintiff's retention of Mr. Behr," noting that "in their September 4, 2008 pro se complaint, Peter and Veron Kalos allege that a representative of the contracting agency informed them that the surety bond was fraudulent on November 20, 2005." Id. (citing Compl. ¶ 9, Kalos v. United States, No. 08-631C). Thus, the court found "that any counsel retained by plaintiff in May 2008 would have agreed to pursue relief related to the allegedly fraudulent bond as desired by [plaintiff]. That Mr. Behr has apparently decided not to pursue that litigation strategy is solely plaintiff's responsibility."[2] Id. In sum, the court concluded that plaintiff "has had sufficient time in which to retain counsel willing to pursue its litigation strategy," and, as a result, provided that if plaintiff had not filed a motion to substitute counsel or "evidence of a new attorney-client fee agreement" by November 26, 2008, the court would dismiss plaintiff's complaint for failure to prosecute pursuant to RCFC 41(b).

Plaintiff responded to the November 12, 2008 Order to Show Cause on November 26, 2008, with two submissions, which the court filed by its leave. See Order, Dec. 1, 2008, at 1. The court described the submissions in a December 1, 2008 order as follows:

>    The first of these submissions is a ten-paragraph response to the court's Order to
>    Show Cause, within which Mr. Kalos makes the following relevant
>    representations:
>
>    >    8. Brickwood has had one attorney who quit without explanation, one
>    >    who quit claiming Brickwood must accept the Government's no-cost
>    >    convenience termination, and one who completely failed to take steps to
>    >    propound [sic] discovery responses from the Government.
>
>    >    9. Of the fourteen attorneys interviewed so far, four have agreed to take
>    >    this case, two are still reviewing the case, and Brickwood has selected an
>    >    attorney outside of the Washington, DC area who it believes can proceed
>    >    unencumbered and in Brickwood's best interest.

---

[2] The mere recitation by the court of plaintiff's litigation strategy is not an endorsement or approval of that strategy.

> 10. Brickwood does not believe it should be required to divulge the names of the companies interviewed, is sending its retainer information under seal to the Judge, and requests permission to do so.
>
> Resp. Show Cause ¶¶ 8-10. The second submission is a notice indicating that the "[u]nder seal retainer agreement is attached," attached to which is[] a sealed envelope labeled "UNDER SEAL ATTORNEY RETAINER." Notice 1.

Id. at 1-2 (footnote omitted). With respect to the first submission, the court found the additional information Mr. Kalos provided concerning plaintiff's search for new counsel to be "vague,"[3] and directed Mr. Kalos to file an additional status report by December 12, 2008, indicating:

> (1) how many of the "fourteen attorneys interviewed so far" were interviewed after Douglas J. Behr and the law firm of Keller and Heckman LLP filed their motion to withdraw as plaintiff's counsel of record (i.e., after September 26, 2008) and (2) how many of the "four" attorneys who "have agreed to take this case" actually agreed to represent plaintiff after Mr. Behr and his law firm filed their motion to withdraw.

Id. at 2. Then, with respect to the purported "retainer agreement," the court noted that Mr. Kalos "overstate[d] the contents of the submitted document." Id. at 3. The court indicated that the document was not a retainer agreement, but was instead:

> a November 25, 2008 letter from Veron Kalos to an attorney that (1) requests an hourly rate that differs from the rate apparently quoted by the attorney, (2) indicates availability for an in-person meeting with the attorney the following week, and (3) notes that a "retainer check" is enclosed with the letter.

Id. As the court noted, Mr. Kalos had not provided any evidence that "the attorney ha[d] accepted the terms of representation proposed by Ms. Kalos." Id. Taking into consideration both of Mr. Kalos's submission, the court concluded:

> Mr. Kalos has been less than clear concerning the steps he has taken to retain new counsel for plaintiff and the status of plaintiff's relationship with the "attorney outside of the Washington, DC area . . . ." However, he does indicate that "four" attorneys "have agreed to take this case" and that plaintiff has entered

---

[3] The court also noted that contrary to Mr. Kalos's implication, it never requested that Peter or Veron Kalos "divulge the names of the companies interviewed . . . ." See Order, Dec. 1, 2008, at 2. Rather, the court merely indicated that in its November 12, 2008 Order to Show Cause, it commented that "Mr. Kalos did not indicate how many attorneys they were interviewing, the dates of the interviews, or the likelihood that any of the interviewed attorneys would agree to representation." Id.

>into a "retainer agreement" with an attorney. Taking Mr. Kalos at his word that four attorneys are willing to represent plaintiff in this matter, the court expects that a motion to substitute counsel by one of the four attorneys will be filed posthaste. Accordingly, plaintiff shall file, **no later than Wednesday, December 31, 2008**, a motion to substitute counsel pursuant to RCFC 83.1(c)(4)(A). **If an attorney has not filed a motion to substitute counsel by December 31, 2008, the court will dismiss plaintiff's case with prejudice pursuant to RCFC 41(b). The court will not grant plaintiff any further extensions of time to retain an attorney.**

Id. (emphasis in the original).

On December 12, 2008, Mr. Kalos filed the requested status report, indicating that "[o]f the fourteen firms interviewed, twelve were interviewed after Keller and Heckman filed its motion to withdraw," and "[o]f that twelve, four agreed to represent Brickwood after Keller & Heckman filed its motion to withdraw." Status Report Brickwood Contractors, Inc., Dec. 12, 2008, at ¶ 2. Adding the "two law firms already known to Brickwood" that had "agreed to represent Brickwood" prior to September 26, 2008, id. ¶1, plaintiff "had a total of six firms to choose from," id. ¶ 2. Also on December 12, 2008, plaintiff filed a motion to substitute counsel, seeking the substitution of Mr. Antoun for Mr. Behr. Thereafter, in a December 30, 2008 order, the court granted both Mr. Behr's motion for leave to withdraw as counsel and Mr. Antoun's motion to substitute counsel. The court directed the parties to file a joint status report by January 28, 2009, to address (1) the additional discovery necessary in this case; (2) the parties' views on the impact of Kalos v. United States, No. 08-631C, on this case; and (3) a suggested schedule for further proceedings. Order, Dec. 30, 2008, at 1. The court also directed the parties to contact the court by February 4, 2008, to schedule a status conference. Id. at 2.

The parties filed their joint status report on January 28, 2009, as directed. Then, on February 2, 2009, the parties jointly telephoned the court. However, instead of being prepared to schedule a status conference, Mr. Antoun indicated that plaintiff had terminated their attorney-client relationship. The court orally directed Mr. Antoun to file a status report to explain the situation for the record. On February 3, 2009, Mr. Antoun filed a status report that provided the following details:

>I. Termination of Counsel
>
>On January 28, 2009, Peter Kalos, President of Brickwood Contractors, Inc., Plaintiff, contacted Brickwood's Attorney of Record, Frederic G. Antoun Jr. by telephone and advised that Counsel's services were terminated, and that Brickwood had hired a new attorney to represent the corporation in this matter.

> Subsequent correspondence and an unscheduled office visit on January 30, 2009 by Veron Kalos, Brickwood's Secretary-Treasurer, confirmed the termination.
>
> Brickwood's Attorney of Record advised Peter Kalos verbally on January 28, 2009 and in correspondence dated January 29, 2009 that a Motion to Substitute Attorney of Record was the preferred methodology to effect the withdrawal of a current attorney and entry of appearance of the new attorney, and requested that Brickwood have its new attorney immediately contact the current Attorney of Record.  This request was repeated at Veron Kalos' office visit on January 30, 2009.
>
> No new attorney has contacted the current attorney of record for Brickwood or the government.
>
> II.  Proposed Action
>
> Brickwood's current Attorney of Record proposes that the Court allow a period of thirty (30) days in which to file either a Motion to Substitute Attorney of Record, or a Motion to Withdraw as Attorney of Record.

Status Report, Feb. 3, 2009, at 1-2.

On February 4, 2009, the court convened a recorded status conference to discuss the contents of the status report.  See Order to Show Cause, Feb. 4, 2009, at 1.  During the status conference, Mr. Antoun responded to the court's inquiries as follows:

> Mr. Antoun . . . indicated that he had asked Mr. Kalos the name of plaintiff's new attorney during their January 28, 2009 telephone conversation, but that Mr. Kalos refused to provide him with that information.  Mr. Antoun also indicated that he had asked Ms. Kalos the name of plaintiff's new attorney during her January 30, 2009 office visit but that she declined to provide it.  However, Ms. Kalos did ask Mr. Antoun to return the balance of plaintiff's retainer so that she and Mr. Kalos could hire plaintiff's new attorney.

Id. at 2.  Mr. Antoun also indicated Peter and Veron Kalos now disputed "the fact that they retained Mr. Antoun to represent plaintiff."  Id. at 1 (footnote omitted).  He explained that the Kaloses' contention arose from the fact that "although he and the parties had reached an agreement on his original representation of plaintiff, Mr. and Ms. Kalos had been attempting to alter the scope of that agreement."  Id. at 1-2.


After concluding the February 4, 2009 status conference, the court issued the instant Order to Show Cause. At the outset, the court addressed the Kaloses' contention that they never retained Mr. Antoun to represent plaintiff in this case:

> The Kaloses' contention is not credible. If they never hired Mr. Antoun, then they lied to the court when they represented in their December 1, 2008 response to the court's November 12, 2008 order to show cause that they had retained a new attorney (i.e., Mr. Antoun) to represent plaintiff. More[]over, if they never hired Mr. Antoun, they perpetrated a fraud on the court by allowing Mr. Antoun to file a Motion to Substitute without objection. Thus, if Mr. and Ms. Kalos continue to maintain that they did not retain Mr. Antoun to represent plaintiff, they will be subject to sanctions pursuant to [RCFC] 11 . . . .

Id. at 1-2 n.1. The court then described the issues presented by plaintiff's termination of the attorney-client relationship with Mr. Antoun:

> As plaintiff is well aware, RCFC 83.1(a)(3) requires corporations to be represented by counsel. Mr. and Ms. Kalos have represented to Mr. Antoun that they have retained new counsel to represent plaintiff in this matter, first making this representation seven days ago, on January 28, 2009. Despite the Kaloses' representations to Mr. Antoun, plaintiff's new attorney has not filed a motion to substitute counsel in this case.

Id. at 2. Accordingly, the court indicated that if plaintiff or the Kaloses did not respond to the Order to Show Cause within two weeks in the manner described in the opening paragraph set forth above, the court would dismiss plaintiff's complaint for failure to prosecute pursuant to RCFC 41(b). The court explained that, "[g]iven their representations to Mr. Antoun that they had already retained new counsel as of one week ago, . . . two weeks [was] sufficient time for Mr. and Ms. Kalos to comply with this order." Id. at 3 (footnote omitted). Moreover, the court indicated that even "if Mr. and Ms. Kalos ha[d] not retained new counsel," it was "confident that two weeks [was] sufficient time to retain new counsel" because "Mr. and Ms. Kalos represented in both their December 1, 2008 response to the court's November 12, 2008 order to show cause and their December 12, 2008 status report that they had identified four attorneys who were willing to represent plaintiff." Id. at 3 n.5.

### Plaintiff's Response to the Instant Order to Show Cause

On February 18, 2009, Peter and Veron Kalos submitted a status report in response to the instant order to show cause.[4] The Kaloses use the first eleven numbered paragraphs of the status

---

[4] The court had directed plaintiff to file a motion to substitute counsel or Peter and Veron Kalos to file a motion for enlargement of time. Because the Kaloses request a sixty-day enlargement of time in the last paragraph of their status report, the court will allow the status

report to further their contention that they never retained Mr. Antoun to represent plaintiff. Status Report of Brickwood Contractors, Inc., Feb. 18, 2009, at ¶¶ 1-11.  According to the Kaloses, they interpreted the court's November 12, 2008 Order to Show Cause "as direction to ensure Mr. Antoun's written retainer agreement included his agreement to seek the declaratory relief sought from the counterfeit bond."  Id. ¶ 4.  The Kaloses' interpretation of the court's order cannot withstand scrutiny.  The court did not direct that any post-May 2008 retainer agreement contain an express agreement about how to prosecute plaintiff's case; the court merely informed the Kaloses that it presumed that any attorney they retained to represent plaintiff in May 2008 or beyond would have been retained with the understanding that the attorney's representation of plaintiff would include the pursuit of declaratory and injunctive relief relating to the allegedly fraudulent surety bond.  Thus, the court presumed in November 2008 that Mr. Behr had been aware of how plaintiff wanted to proceed when he was retained.  Similarly, the court logically presumes that the Kaloses would not have retained Mr. Antoun without informing him of how they wanted to prosecute the case; after all, the Kaloses had already parted ways with three prior attorneys for the attorneys' refusal to comply with the Kaloses' preferred litigation strategy.  As a result, disputes about the scope of Mr. Antoun's representation of plaintiff do not render that representation a nullity.

Moreover, as the court noted in the instant Order to Show Cause, the Kaloses' present contention is at odds with both their December 1, 2008 representation to the court that they had retained a new attorney to represent plaintiff and plaintiff's filing of a motion to substitute Mr. Antoun in the place of Mr. Behr.  See Order to Show Cause, Feb. 4, 2009, at 1-2 n.1.  The Kaloses did not address either of these inconsistencies in their status report, even in light of the court raising the possibility of sanctions.  Thus, the court finds no reason to depart from its conclusion that the plaintiff retained Mr. Antoun.  The Kaloses' present contention that plaintiff did not retain Mr. Antoun is, at a bare minimum, disingenuous, and, at best, represents a flagrant misunderstanding of the attorney-client relationship and the court's rules of procedure.

In the next eleven numbered paragraphs of their status report, the Kaloses describe their disagreement with the positions asserted by Mr. Antoun in the January 28, 2009 joint status report on plaintiff's behalf.  Status Report of Brickwood Contractors, Inc., Feb. 18, 2009, at ¶¶ 12-22.  However, the nature and scope of their disagreement is of little relevance here; the reason why plaintiff terminated its relationship with Mr. Antoun does not in any way alter plaintiff's responsibility to retain new counsel as directed by the court in the instant Order to Show Cause.[5]

---

report to be filed by its leave and will treat it as a motion for enlargement of time.

[5] The court does note, however, that the Kaloses appear to completely misinterpret the first paragraph of section III.B of the January 28, 2009 joint status report, which provides:

> Brickwood's position is that failure to invalidate the termination for convenience or reduce the termination costs would not defeat the claims in Kalos v. United States, No. 08-631.  Likewise, the Government's success on the pending

In the final two numbered paragraphs of their status report, the Kaloses revisit both the withdrawal of plaintiff's second attorney, Mr. Newton, due plaintiff's failure to accept his settlement recommendation, and issues related to the purported fraudulent surety bond. Id. ¶¶ 23-24. Again, Mr. Newton's representation is not relevant here; Mr. Newton's withdrawal in January 2008 does not in any way alter plaintiff's responsibility to retain new counsel as directed by the court in the instant Order to Show Cause.

In sum, despite their claims in prior submissions that several attorneys were willing to prosecute plaintiff's case to their satisfaction, the Kaloses have not provided the court "with definitive evidence that plaintiff has retained new counsel" as required in the instant Order to Show Cause. Nor have the Kaloses even attempted to explain why they have not retained an attorney to replace Mr. Antoun (or their apparent misrepresentation to Mr. Antoun that they had retained new counsel to represent plaintiff). All that the Kaloses have provided is a litany of complaints about plaintiff's prior attorneys.

### Plaintiff's Inability to Maintain an Attorney-Client Relationship

As the court has noted several times in the past, see Order to Show Cause, Sept. 29, 2008, at 1; Order to Show Cause, Nov. 12, 2008, at 1, 4-5; Order to Show Cause, Feb. 4, 2009, at 2, plaintiff has exhibited a marked inability to maintain a relationship with counsel. In four of the seven cases that plaintiff filed prior to the instant case, plaintiff has had multiple attorneys.[6] Morever, in the instant case, plaintiff has been represented by four attorneys–a veritable revolving door of representation. As the court noted in the instant Order to Show Cause:

> Plaintiff, through the actions of its principals, has demonstrated a clear inability to maintain a viable relationship with its counsel. Plaintiff's difficulties with counsel have resulted in numerous delays in the case, such that the case is over two years old and only minimal discovery has occurred. Since being assigned to this case on February 29, 2008, almost one year ago, the undersigned has spent virtually all of its time dealing with issues related to plaintiff's inability

---

motion to dismiss in Kalos v. United States, No. 08-631, or a judgment for the Government thereafter, would not defeat the claims made by Brickwood in the instant matter.

Joint Status Report, Jan. 28, 2009, at 2-3. Clearly, this paragraph reflects Mr. Antoun's belief that a judgment in one case would not affect any judgment in the other case, and not, as the Kaloses contend, "that Termination Costs in this case[] can include the monetary relief sought in the related case." See Status Report of Brickwood Contractors, Inc., Feb. 18, 2009, at ¶ 12.

[6] The four cases bear the following case numbers: 99-180, 99-367, 99-388, and 05-271.

      to maintain a relationship with counsel.[FN]  This is not an efficient or effective use of the court's time.

          [FN]  But for the discovery scheduling order the court issued on June 24, 2008, the court would have spent all of its time on this issue.

Order to Show Cause, Feb. 4, 2009, at 2.

      With the most recent submission by the Kaloses, it is apparent to the court that they have not taken the orders of the court seriously, and have instead engaged in a endless stream of dilatory tactics in a fruitless effort to retain counsel that will prosecute this case precisely the way they want, regardless of the legal merits.  The court declines to waste any more time on this matter.  Peter and Veron Kalos have not complied with the instant Order to Show Cause and have provided the court with absolutely no indication that they can retain counsel who can–in good conscience and within the bounds of RCFC 11–comply with their wishes.  Accordingly, the court **DENIES** the Kaloses' motion for a sixty-day enlargement of time and **DISMISSES** plaintiff's complaint for failure to prosecute pursuant to RCFC 41(b).  **COSTS TO DEFENDANT**.  The clerk is directed to enter judgment accordingly.

      The clerk shall also deliver a copy of this order to plaintiff via regular U.S. Mail at the following address:

                  Brickwood Contractors, Inc.
                  P.O. Box 4685
                  Manassas, VA 20108-4685

Further, Mr. Antoun is directed to provide a copy of this order to plaintiff via U.S. Mail, electronic mail, and facsimile.  Mr. Antoun shall then file a status report with the court, **no later than Friday, February 27, 2009**, confirming service of this order on plaintiff and describing the means and date in which it was effected.

      **IT IS SO ORDERED.**

                                      s/ Margaret M. Sweeney
                                      MARGARET M. SWEENEY
                                      Judge